CASE NO.: 24-1388

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

**PATRICIA CONWAY,**
(Plaintiff-Appellant)

**vs.**

**MERCY HOSPITAL ST. LOUIS,**
(Defendant-Appellee)

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

CASE NO.: 4:22-cv-01113-RLW

THE HONORABLE RONNIE L. WHITE

_____

**BRIEF OF APPELLANT**

_____

Joseph A. Ott & Mark E. Blankenship Jr.
Ott Law Firm
3544 Oxford Blvd, Maplewood, MO 63143
(314) 293-3756

Geoffrey D. Kearney
The Law Office of Geoffrey D. Kearney, PLLC
P.O. Box 8276, Pine Bluff, AR 71611

Attorneys for Appellant

i

## SUMMARY OF THE CASE

On February 12, 2024, the United States District Court for the Eastern District of Missouri granted summary judgment in favor of Mercy Hospital St. Louis ("Mercy") on the religious discrimination claim filed by its former employee Patricia Conway. *See* Judgment, App. 59, R. Doc. 34. This ruling was based on the determination that Defendant-Appellant is a religious organization, and therefore exempt from suit under Title VII. On appeal, Ms. Conway asserts that there was a material fact dispute as to Mercy's status.

If oral argument is deemed appropriate, fifteen minutes per side should suffice.

# **TABLE OF CONTENTS**

Summary of the Case…………………………………………………………………2

Table of Contents…………………………………………………………………...3

Table of Authorities………………………………………………… . . . 4

Jurisdictional Statement……………………………………………………………6

Statement of the Issues……………………………………………………………..6

Statement of the Case……………………………………………….........8

Summary of the Argument……………………………………………………..9

Argument………………………………………………………………....10

      I.     Mercy's agreement to the Centers for Medicare & Medicaid Services renders it unable to assert a religious exemption in this case. . . . . . 11

      II.    The district court erroneously concluded that Mercy is a religious corporation. … . …………… . …. …...…….…… . . . . . . . .20

Conclusion……………………………………………………………….…..26

Certificate of Service and Compliance Limits……………………………… ...27

Addendum……………………………………………………………..….28

# TABLE OF AUTHORITIES

**Cases**

*Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 409 (Mo. Ct. App. 1996) ...............15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)...................................10

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)...............................................12

*Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977) .............................11

*Biden v. Missouri*, 595 U.S. _(2022), No. 21A240, at *2 (Jan. 13, 2022)..............15

*Boswell v. Panera Bread Co.*, No. 4:14-CV-01833-AGF, at *30 (E.D. Mo. Mar. 24, 2016) ...................................................................................................................16

*Davis v. Fleming Companies, Inc.*, 55 F.3d 1369, 1371 (8th Cir. 1995)................10

*Dormeyer v. Comerica Bank-Illinois,*223 F.3d 579, 582 (7th Cir. 2000) ...............18

*Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 493-94 (8th Cir. 2002)................18

*EEOC v. Kamehameha Schs./Bishop Estate*, 990 F.2d 458, 460 (9th Cir. 1993) ....13

*EEOC v. Townley Eng'g Mfg. Co.*, 859 F.2d 610, 618 (9th Cir.1988) .....................20

*Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 659 (8th Cir. 1992) ................18

*Garcia v. Salvation Army*, 918 F.3d 997, 1003 (9th Cir. 2019) ..............................13

*Gilooly v. Missouri Dept. of Health and Senior Servs.*, 421 F.3d 734, 738 (8th Cir. 2005) ...................................................................................................................10

*Hartnagel v. Northman*, 953 F.2d 394, 395 (8th Cir. 1992)....................................10

*Heckler v. Cmty. Health Servs. of Crawford County, Inc.,*467 U.S. 51, 59 (1984) .18

*Kosakow v. New Rochelle Radiology Assocs.,*274 F.3d 706, 724-25 (2d Cir. 2001) .................................................................................................................................18

*LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 235-36 (3d Cir. 2007) .................................................................................................... *passim*

*Mennen v. Easter Stores,* 951 F. Supp. 838 (N.D. Iowa 1997) ...............................16

*Podkovich v. Glazer's Distributors of Iowa, Inc.*, No. C04-4104-MWB, at *26-27 (N.D. Iowa Aug. 11, 2006) ...................................................................................19

*Sandoval v. A.B.M.I*, 578 F.3d 787, 792-93 (8th Cir. 2009)....................................11

*Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 850 (8th Cir. 2002) ...................................................................................................................10

*Spencer v. World Vision, Inc.,* 633 F.3d 723 (9th Cir. 2010).......................... *passim*

*Woodford v. Cmty. Action of Greene County, Inc.,*268 F.3d 51, 57 (2d Cir. 2001)..18

**Statutes**

28 U.S.C. § 1291……………………………………………………….6
28 U.S.C. § 1331…………………………………………………….6
42 U.S.C. § 1396a(p)(1) ........................................................14
42 U.S.C. § 1395cc ........................................................14
42 U.S.C. § 1395cc(b)(2) ........................................................14
42 U.S.C. § 1396a(a)(27) ........................................................14
Title VII of the Civil Rights Act of 1964…… . . . . …………………………*passim*

**Regulations**

86 Fed. Reg. at 61572 ........................................................15
*Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61,555 (Nov. 5, 2021) ................................................14

## JURISDICTIONAL STATEMENT

Ms. Conway alleged Mercy violated her religious rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, over which the district court ha federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Ms. Conway's appeal under 28 U.S.C. § 1291.

This appeal follows the ruling of the United States District Court for the Eastern District of Missouri, entered on February 12, 2024. Ms. Conway filed her Notice of Appeal on February 23, 2024. Ms. Conway appeals from a final order and judgment that dismissed her case in its entirety and disposed of her sole cause of action.

## STATEMENT OF THE ISSUES

**I.      WHETHER THE CMS VACCINE MANDATE'S REQUIREMENT THAT MERCY ALLOW WORKERS TO SEEK A RELIGIOUS EXEMPTION WAIVES OR ESTOPS MERCY FROM ASSERTING IMMUNITY AS AN AFFIRMATIVE DEFENSE.**

*Acetylene Gas Co*. *v. Oliver*, 939 S.W.2d 404 (Mo. Ct. App. 1996)


**II.      WHETHER MERCY IS A RELIGIOUS CORPORATION.**

*LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217 (3d Cir. 2007)

*Spencer v. World Vision, Inc.,* 633 F.3d 723 (9th Cir. 2010)

## STATEMENT OF THE CASE

On or about October 21, 2022, a Petition Ms. Conway filed in the Circuit Court of St. Louis County, Missouri, alleging various claims of religious discrimination was removed to the Eastern District of Missouri.

On March 16, 2023, Mercy filed a motion for summary judgment of Ms. Conway's Complaint. App. 9, R. Doc. 15. After being briefed by the parties, the district court granted the motion for summary judgment on February 12, 2024. App. 48, R. Doc. 34. Its decision was based on the conclusion that Mercy was a religious organization exempt from the strictures of Title VII. On February 23, 2024, Ms. Conway filed her Notice of Appeal seeking review by this Court. R. Doc. 36.

# SUMMARY OF THE ARGUMENT

The Court should reverse the district court's order granting summary judgment with regard to Ms. Conway's claim for discrimination in violation of Title VII because Mercy has admitted that it had no choice but to implement the CMS COVID-19 Vaccination mandate. The vaccine mandate plainly required that all recipients of CMS funds provide a mechanism through which individuals could request an exemption from the vaccination requirements because of religious beliefs. Because Mercy accordingly adopted a program that provided for religious exemptions to the requirement that each employee be vaccinated, it cannot rely upon its purported status as a religious institution to escape liability when it administered the exemption program in a discriminatory way. Additionally, under either the test used by the district court or suggested in this brief, there exists a genuine issue of material fact as to whether Mercy is a religious organization.

# ARGUMENT

## STANDARD OF REVIEW

The Eighth Circuit reviews the district court's grant of summary judgment de novo. *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 850 (8th Cir. 2002). To succeed against a motion for summary judgment, the plaintiff must present sufficient evidence to create a genuine issue of material fact. *Gilooly v. Missouri Dept. of Health and Senior Servs.*, 421 F.3d 734, 738 (8th Cir. 2005). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Northman*, 953 F.2d 394, 395 (8th Cir. 1992). In reviewing the judgment of the district court, the Court must view all evidence "in the light most favorable to the nonmoving party." *Id*.

Summary judgment should be sparingly used and then only in those rare instances when there is no dispute of fact and when there exists only one conclusion. *Davis v. Fleming Companies, Inc.*, 55 F.3d 1369, 1371 (8th Cir. 1995). All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party. *Id*. In considering a motion for summary judgment, the district court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, it should give all

reasonable inferences to the non-moving party. *Id*. It is under this framework that the Court should review the district court's order granting summary judgment.

I. **Defendant's vaccination program was required by the CMS Rules to have a religious exemption, and § 2000(e) does not immunize this Defendant from compliance with the Rule.**

The religious organization exemption to Title VII's prohibition against discrimination provides that:

> "[t]his subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1.

"Title VII of the Civil Rights act of 1964 is to be accorded a liberal construction in order to carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of . . . discrimination." *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977) (quotation marks and citations omitted). In particular, "[s]uch liberal construction is also to be given to the definition of `employer.'" *Id.* (citation omitted); *also Sandoval v. A.B.M.I*, 578 F.3d 787, 792-93 (8th Cir. 2009). In *Sandoval*, the Eighth Circuit held that a close analysis

of the business dealings and corporate documents of the defendant precluded summary judgement on a claim of exemption from Title VII. *Id.* at 800.

Though the exemption sought by the employer in *Sandoval* is different than that obtained in the instant case, that case similarly involved an employer's pursuit of immunity under multi-factor test. The *Sandoval* approach of closely examining the business dealings and documents of record is instructive here. Undertaking such an analysis must lead to the same outcome as *Sandoval*; a determination that there is a genuine issue of material fact as to whether Mercy is entitled to be held exempt (in this case, as a religious organization) and reversal of the grant of summary judgment.

At the district court level, Appellee treated the § 2000e-1 exemption as a jurisdictional bar to any Plaintiff asserting a Title VII claim against a religious corporation. But courts have routinely denied that assertion. For instance, in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006), the Supreme Court established the "bright line" rule that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."

In that case, the Plaintiff asserted a claim of discrimination and the Defendant maintained a right to judgment as a matter of law because the employer did not have a sufficient number of employees pursuant to Title VII's numerosity requirement.

*Id.* at 504. The Supreme Court held, in favor of the employee, that the numerosity requirement was not a jurisdictional pre-requisite to the suit.

The fact that the claimed exemption is not a jurisdictional pre-requisite but rather an affirmative defense shifts the burden of proof onto the Appellee – Defendant Mercy must *prove*, beyond a point at which a reasonable juror could think otherwise, that it is a religious corporation. Although the Eighth Circuit has not addressed whether the religious corporation exemption is an affirmative defense, other courts have routinely held the same. "The entity seeking the benefit of the statute bears the burden of proving it is exempt." *EEOC v. Kamehameha Schs./Bishop Estate*, 990 F.2d 458, 460 (9th Cir. 1993); *Garcia v. Salvation Army*, 918 F.3d 997, 1003 (9th Cir. 2019) (citing *Kamehameha*).

Because the exemption is an affirmative defense, Plaintiff can defeat the application thereof by any method normally available for the same – including, as described below, through the doctrines of judicial estoppel and waiver.

The Centers for Medicare & Medicaid Services issued a COVID-19 vaccination mandate ("CMS Mandate") on November 5, 2021, which applies to Mercy and its staff. *See Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 Fed. Reg. 61,555 (Nov. 5, 2021). The CMS Mandate was then upheld by the United States Supreme Court on January 13, 2022.

*Biden v. Missouri*, 142 S. Ct. 647 (2022). Appellee admitted below that it "had no other choice but to implement a vaccine mandate." R. Doc. 18 at 3 n. 2.

To participate in the Medicare program and receive payment for services furnished to Medicare beneficiaries, providers such as hospitals, home-health agencies, hospices, and skilled nursing facilities must enter into a provider agreement with CMS after demonstrating that they meet the conditions for participation. 42 U.S.C. § 1395cc. Medicaid providers, likewise, voluntarily enter into provider agreements with State Medicaid agencies to be eligible for participation in that program. 42 U.S.C. § 1396a(a)(27). By voluntarily entering into a provider agreement, a facility agrees that it will comply with the requirements of the Medicare and Medicaid statutes and the regulations that the Secretary issues under these statutes. *See* 42 U.S.C. § 1395cc(b)(2); *see also id.* § 1396a(p)(1).

On November 5, 2021, CMS issued the interim final rule that is the subject of this case. Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg.13 61,555 (Nov. 5, 2021). "The rule *requires* providers to offer medical and religious exemptions, and does not cover staff who tele work full-time." *Biden v. Missouri*, 595 U.S. ___(2022), No. 21A240, at *2 (Jan. 13, 2022)[1] (emphasis supplied).

_____

[1] The CMS Mandate includes a section entitled "vaccine exemptions." 86 Fed. Reg. at 61572. This section of the CMS Mandate acknowledges there are "Federal laws,

9

A. Mercy's compliance with the mandate was an intentional relinquishment of exemption from the applicability of Title VII.

Because the Mandate as described "requires" providers to offer religious exemptions, compliance with the same operates as a waiver of the exemption, at least for actions taken in compliance with the Mandate. As argued below, Mercy is not a religious corporation. But even if they were, their compliance with the mandate waives their right to claim exemption from Title VII.

"A waiver is the intentional relinquishment of a known right." *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 409 (Mo. Ct. App. 1996). "To rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible." *Id.* (citation omitted); *see Boswell v. Panera Bread Co.*, No. 4:14-CV-01833-AGF, at *30 (E.D. Mo. Mar. 24, 2016). Courts have held that failure to act in a manner consistent with the parameters of a

_____

including the ADA, section 504 of the Rehabilitation Act, section 1557 of the ACA, and Title VII of the Civil Right Act, that prohibit discrimination based on race, color, national origin, religion, disability and/or sex, including pregnancy." *Id.* The CMS Mandate recognizes that "in some circumstances, employers may be required by law to offer accommodations for some individual staff members." 86 Fed. Reg. at 61572. Accordingly, the CMS Mandate requires covered healthcare facilities to "establish and implement a process by which staff may request an exemption from COVID-19 vaccination requirements based on an applicable Federal law." *Id.* at 61572.

claimed exemption is sufficiently voluntary to constitute relinquishment of the exemption. In *Mennen v. Easter Stores,* 951 F. Supp. 838 (N.D. Iowa 1997), the district court held that an employer that did not adhere to an exemption effected a forfeiture of the exemption.

In this case, Mercy has indisputably established policies and procedures for religious exemptions from the vaccine mandate. Mercy Hospital St. Louis states in their religious exemption section of their Covid-19 Vaccine Policy that exemption applicants must upload their Religious Exemption Request Form, along with a certification form from their religious leader or other person who can attest the individual's religious beliefs are sincerely held, by August 15, 2021. App. 38-41, R. Doc. 20 at 4-8; App. 42-47, R. Doc. 20-1. And, Plaintiff Conway complied with the provisions of Mercy's policy. *Id.* Moreover, Mercy made a number of explicit and discretionary decisions about which religious beliefs were sufficient to warrant an exemption from the vaccine. *Id.* The Missouri Division of Unemployment Commission found that Mercy did not adhere to the standards they had established for the vaccine mandate. *Id.*

Mercy's affirmative conduct in continuing to contract to receive Medicare reimbursement, and complying with the vaccine mandate rule requiring employers to provide religious exemptions from the mandate, demonstrates an intentional relinquishment of their right to claim an exemption as a religious corporation. This

was not a case in which, for instance, an organization voluntarily implemented some manner of equal opportunity policy that on it had the right to enforce. Rather, it held itself out to the federal government and expressly bound itself to protect the religious beliefs of its employees in exchange for access to CMS funds. While it is not necessarily a waiver of its exemption for *all* purposes, certainly, fairness and justice require that it must within the context of this *specific area*. Moreover, as a factual matter, the absence of testimony from Mercy about their exact thought process and organizational goals in promoting a religious exemption policy when they did not believe it applied to them must be developed. Because such testimony is lacking, the motion for summary judgment should have been denied.

B. <u>Mercy's failure to raise their claimed exemption from complying with the vaccine mandate's requirement that employees be allowed to claim a religious exemption should have resulted in a finding of estoppel from asserting the affirmative defense.</u>

"The principle of [equitable] estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation." *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 659 (8th Cir. 1992); *see also Heckler v. Cmty. Health Servs. of Crawford County, Inc.,*467 U.S. 51, 59 (1984) (referring to the Restatement (Second) of Torts to define equitable estoppel as warranted in situations

where one person has misrepresented facts and another person reasonably relies on the misrepresentation to his or her detriment).

The doctrine of equitable estoppel has previously been applied to estop employers from asserting an affirmative defense contesting an employee's entitlement to FMLA leave. *See Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 493-94 (8th Cir. 2002) (citing *Kosakow v. New Rochelle Radiology Assocs.,* 274 F.3d 706, 724-25 (2d Cir. 2001) (affirming the district court's decision to estop an employer from asserting an affirmative defense challenging an employee's FMLA eligibility when the employer's unintentional misleading behavior caused the employee to justifiably and detrimentally rely on the FMLA leave); *Woodford v. Cmty. Action of Greene County, Inc.,* 268 F.3d 51, 57 (2d Cir. 2001) (authorizing equitable estoppel where an employer initially provided notice of eligibility for leave and later seeks to challenge it); *Dormeyer v. Comerica Bank-Illinois,* 223 F.3d 579, 582 (7th Cir. 2000) (recognizing a district court's ability to equitably estop employers from asserting an affirmative defense contesting an employee's entitlement to FMLA leave in situations where the employer's words or conduct have misled the employee into relying on the leave)); *Podkovich v. Glazer's Distributors of Iowa, Inc.*, No. C04-4104-MWB, at *26-27 (N.D. Iowa Aug. 11, 2006).

In *Duty v. Norton-Alcoa*, the Eighth Circuit Court of Appeals approved a finding by the district court that the employer could not rely upon the statutory language of the FMLA as an affirmative defense where the employer explicitly guaranteed longer leave. *Duty,* supra at 494. In that case, the employee was fired for taking longer than 12 weeks of leave. *Id*. The Eighth Circuit held the district court's reliance upon evidence that the employee relied upon a letter from the employer guaranteeing longer than 12 weeks of leave was reasonable. *Id.*

Here, the Mercy policy for vaccinations required that employees be vaccinated by a certain date. App. 38-41, R. Doc. 20 at 4-8; App. 42-47, R. Doc. 20-1. The policy provided that religious exemptions would be granted provided a request was timely submitted. *Id.* Plaintiff did in fact submit her request and complied in all ways with the Mercy policy. *Id.*. As a result, she did not get the vaccine in time and was terminated. *Id.* At the unemployment hearing, the Mercy representative made no effort to claim any religious exemption from the vaccine policy mandate – suggesting that, in conformance with Plaintiff's claim, no one within Mercy had any knowledge that claims of religious exemption would not be honored. *Id.*

On these facts, it is clear that there exists at minimum a material fact dispute about whether or not Plaintiff Conway detrimentally relied upon the Mercy vaccine policy's review of religious exemptions. Plaintiff relied on Mercy's explicit

14

statements that it would review her claim of exemption appropriately, and was terminated as a result.

## II.   Even if the CMS Mandate Is Not Held to prevent Mercy from being Held a Religious Corporation, Mercy Should Not Have Been Held to be a Religious Corporation.

Title VII does not define what constitutes "a religious corporation, association, educational institution, or society." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 235-36 (3d Cir. 2007); *EEOC v. Townley Eng'g Mfg. Co.*, 859 F.2d 610, 618 (9th Cir.1988). Appellee requested the district court apply the Third Circuit's religious corporation test. However, that test is deeply flawed. Notably, the federal government has recently taken the position that the Ninth Circuit's is more appropriate. Nonetheless, under either test, Mercy is not a religious corporation.

Appellee, and the district court, relied heavily upon the criteria in *LeBoon* to establish itself as a "religious corporation" under Title VII. The *LeBoon* factors are as follows:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by

15

having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists

*Leboon*, 503 F.3d at 226 (3d Cir. 2007) (citations omitted).

Though there was no dispute as to the fact that numerous factors weighed in favor of a finding that Mercy is a religious corporation. However, as also agreed upon by all involved, not each of them did. For instance, Appellee conceded below that it employs many individuals on a wide variety of religious denominations. In fact, Mercy states on the Careers page of their website that it accepts applicants of all backgrounds, including their religion. Indeed, Appellant Conway testified that she was not religious, that during the course of her time there, she did not witness any Catholic services, most of her co-employees were not Catholic, religion was not part of training or how Mercy held itself out to the public, made significant profits, and other facts militating against an exemption. App. 43-47, R. Doc. 20-1.

Based on the facts of record, Conway made either a conclusive showing or raised a genuine issue of material fact on a showing on numerous factors. Namely, that health care is a "secular product", that Mercy holds itself out as secular organization, whether and/or the extent to which prayer and worship are regularly aspects of its activities, whether and/or the extent of the religious instruction present

16

in the organization, the makeup of its membership, and, despite non-profit status, it made significant profits. Even assuming the propriety of the *LeBoon* test, there is clearly a material dispute as to whether Mercy is indeed a religious corporation.

That said, the *LeBoon* test should not be adopted or applied. It allows an entity to engage with the public and secular activities without conforming to the strictest tenets of its espoused faith, and make numerous declarations about its openness and obtain the benefit of talent acquisition, business, community standing, etc., that accompany it, all while possessing the ability to dismiss those same people for reasons that no other employer is allowed to. The very nature of the test is skewed in favor of such employers. It enunciates nine factors. Four of the first five factors relate to formalistic aspects of the organization as three or four of the first five of the nine factors are separate inquiries about organizational formalities on which most any organization seeking a religious exemption would prevail. For instance, an organization that expresses religious goals in its organizing documents seems likely to have an affiliation with a church that maintains influence in the organization. It treats religious worship and instruction, two more aspects of religious life that often go together, as separate factors. As applied below, it gives short shrift to the fact that the business activity is decidedly nonreligious and a huge aspect of the American economy and day to day life. It does not expressly place, in the instant case, any weight on the composition of the workforce itself, any significance on the perception

employees reasonably possess—and again, as applied here, the district court gave short shrift to the appellant's experiences working there[2]—or that of the public. Notably, the test articulates the public aspect as how the entity holds itself out, with arguably no room for how it is seen.

The court in *Spencer v. World Vision, Inc.,* 633 F.3d 723 (9th Cir. 2010), aptly assessed the problems with *LeBoon*. For instance, it notes a troubling overbreadth. I*d.* at 730-32. Moreover, it highlights the issue of non-profit institutions with church affiliations using their affiliations as a cover for religious discrimination in secular employment. *Id.* at 745. In fact, Judge Kleinfeld's concurrence raises a worrying hypothetical that is of the same character as the current matter:

> [P]hysicians may organize a hospital as a nonprofit affiliated with a church, stating a religious purpose of healing the sick in its articles and bylaws. The hospital may then charge full market prices to patients and their insurers, and pay the physicians who organized it and their employees around $50,000 a year for residents, $200,000 a year for employed physicians working a week on, week off, and $400,000 a year for radiologists. It can defend its stated religious purpose with the true argument that whatever church it affiliates with promotes healing the sick as a religious duty. Yet the non-profit hospital differs from a for profit hospital only in that the board does not have to concern itself with pesky stockholders and does not have to pay income taxes on the excess of revenues over expenses and depreciation. *The free exercise concern protected by the exemption does not suggest that the hospital should be allowed to discriminate by religion in*

[2] *See* App.56-57, R. Doc. 34 at 9-10.

> *hiring, since physicians, nurses, and other employees can perform their tasks equally well regardless of their religious beliefs.*

*See id.* at 746 (emphasis supplied).

Thus, both *Spencer* and Judge Rendell's dissent in *LeBoon* make clear the inadequacies of *LeBoon* to analyze this question. *Compare id.* at 730-32, 734, 746-48 *with LeBoon*, 503 F.3d at 238.

Notably, the *Spencer* approach is generally favored by the government. On Monday December 7, 2020, OFCCP issued a press release announcing that it would soon publish its Final Rule updating OFCCP's Rules re religious discrimination titled: "Implementing Legal Requirements Regarding the Equal Opportunity Clause's Religious Exemption." OFCCP reported that it intended the Final Rule to acknowledge case law decisions permitting religious-exercising organizations and "closely held" corporations to apply religious belief defenses to claims of alleged unlawful discrimination in employment. Two days later, OFCCP published its Final Rule in the Federal Register. The Final Rule adds definitions for the terms "Particular religion," "Religion," "Religious corporation, association, educational institution, or society," and "Sincere." Most importantly, OFCCP's definition of "Religious corporation, association, educational institution, or society" adopts a modified view of the test used in *Spencer* to determine the conditions a federal Contractor must satisfy to be eligible for the religious exemption.

19

Under the appropriate *Spencer* test, an entity qualifies as a religious corporation, association, or society when it is: "(1) organized for a religious purpose, (2) is engaged primarily in carrying out that religious purpose, (3) holds itself out to the public as an entity for carrying out that religious purpose, and (4) does not engage primarily or substantially in the exchange of goods or services for money beyond nominal amounts." *Id.* at 748. "[H]ow an institution charges offers an objective test for sorting out which institutions are designed to exchange goods or services for money, from those designed to give them away except perhaps for nominal charges in order to serve a religious objective." *Id.* at 747. "This objective measure relates closely to the purpose of the exemption." *Id.* "A religious purpose may be a motive, or money may be a motive, for work that serves others." *Id.* "If money is not available as an incentive, that is strong evidence, in the purportedly religious institution, that exercise of religion is the objective." *Id.* "On the other hand, if satisfaction of a religious purpose is insufficient to motivate the performance, then the performance may be consistent with religion but not motivated by it." *Id.*

Here, Defendant Mercy Hospital would not qualify as a religious organization under this test. Mercy received at minimum $3,207,180 in taxable income during the years 2017-2019. App. 38-39, R. Doc. 20 at 4-5. Mercy had an equity interest in at least 28 for profit sub entities during 2019. App. 39, R. Doc. 20 at 5. The majority of workers at Mercy are not Catholic. App. 39, R. Doc. 20 at 5. Plaintiff herself

regularly worked with and was employed by Mercy for-profit entities. App. 43, R. Doc. 20-1 at 1. Plaintiff was never instructed on Catholic doctrine nor asked in any way about her religion while she worked at Mercy. *Id.*

The only time Mercy interacted with their employees in any religious way was when they were *ordered to* by the CMS Mandate. *Id.* Even then, the majority of their workers had no religious interaction with Mercy at all. App. 43-45, R. Doc. 20-1 at 1-2. In fact, during the administrative appeal of Plaintiff's claim for unemployment benefits, the worker representing Mercy made no reference at all to the hospital's religious organization status. App. 44-45, R. Doc. 20-1 at 2-3.

For that reason, Plaintiff asserts that Defendant's argument for summary judgment on the basis of being exempt as a religious corporation from Title VII religious discrimination must fail. The Court should take the *Spencer* approach discussed herein, or apply its own test that adequately weighs the facts and circumstances of a given case as opposed to strongly favoring the employer at all times.

## CONCLUSION

For the above-stated reasons, the summary judgment order should be vacated and this matter remanded to be placed on the district court's trial calendar.

## <u>CERTIFICATE OF COMPLIANCE AND SERVICE</u>

I hereby certify that this brief was prepared in Times New Roman, 14 pt font, that the full document contains 5,314 words, that I filed a copy thereof with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by CM/ECF on July 3, 2024, and that this method of filing will cause electronic service to be had on all counsel of record.

Ott Law Firm

/s/ Joseph A. Ott
Joseph A. Ott, #67889
Mark E. Blankenship Jr., #73123
3544 Oxford Blvd
Maplewood, MO 63143
Phone: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law
Attorneys for Appellant