CASE NO.: 24-1388

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

**PATRICIA CONWAY,**
(Plaintiff-Appellant)

**vs.**

**MERCY HOSPITAL ST. LOUIS,**
(Defendant-Appellee)

**APPEAL FROM THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

CASE NO.: 4:22-cv-01113-RLW

THE HONORABLE RONNIE L. WHITE

---

**ADDENDUM OF APPELLANT**

---

Joseph A. Ott & Mark E. Blankenship Jr.
Ott Law Firm
3544 Oxford Blvd, Maplewood, MO 63143
(314) 293-3756

Geoffrey D. Kearney
The Law Office of Geoffrey D. Kearney, PLLC
P.O. Box 8276, Pine Bluff, AR 71611

Attorneys for Appellant

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA CONWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-1113 RLW |
| | ) | |
| MERCY HOSPITAL ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant Mercy Hospital St. Louis's Motion for Summary Judgment. (ECF No. 15). The motion is fully briefed and ready for disposition. For the reasons set forth below, the Court will grant Defendant's motion.

### Background

This case arises following the termination of Plaintiff Patricia Conway's employment as a registered nurse for Defendant. (ECF No. 1, Ex. A). In July 2021, Defendant informed Plaintiff of its planned implementation of a COVID-19 vaccination mandate and policy (hereinafter, the "Mandate"). The Mandate required all of Defendant's employees to receive a COVID-19 vaccine or, alternatively, to receive a medical or religious exemption from the Mandate. Plaintiff submitted a request for a religious exemption, which Defendant denied. Plaintiff subsequently informed management that she did not plan on receiving a COVID-19 vaccine. On or around October 28, 2021, Defendant terminated Plaintiff's employment for failure to comply with the Mandate. *Id.*

On September 20, 2022, Plaintiff filed suit in state court, asserting three counts of religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq. Id.* Defendant removed the action to this Court based on federal-question jurisdiction. (ECF No. 1).

On March 16, 2023, Defendant moved for summary judgment on the sole basis that it is a religious organization exempt from religious discrimination claims under Title VII. (ECF Nos. 15, 18). Defendant filed a Statement of Uncontroverted Material Facts ("SUMF"), which is wholly admitted by Plaintiff and will therefore be deemed admitted. (ECF Nos. 16, 20). Defendant describes therein the Mercy hospital system's formation and operational nature as follows.

Mercy Health Ministries is a public juridic person of the Roman Catholic Church. (Def. SUMF ¶ 1). Mercy was founded by the Sisters of Mercy, a Roman Catholic Religious order of nuns. (*Id.* at ¶ 2). Mercy Health Ministries was formed in accordance with the Canonical Statutes and is an entity for Canon Law purposes only, as it is not incorporated under the civil laws of any state. (*Id.* at ¶ 3). Mercy Health is the civil business entity and organization through which Mercy Health Ministries and the Catholic Church perform their health care services and mission work. (*Id.* at ¶ 4). Mercy Hospital St. Louis is a d/b/a of Mercy Hospitals East Communities, which is a wholly-owned subsidiary of Mercy Health East Communities, which is a wholly-owned subsidiary of Mercy Health, which is a wholly-owned subsidiary of Mercy Health Ministries. (*Id.* at ¶ 5). Defendant Mercy Hospital St. Louis's mission statement is: "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service." (*Id.* at ¶ 6).

Mercy Health Ministries, Mercy Health, Mercy Hospital St. Louis, and all of Mercy Health's other wholly-owned subsidiaries are listed in the Official Catholic Directory, meaning that the listed entity can own property in the name of the Catholic Church and is considered tax exempt by the Internal Revenue Service ("IRS") based on its inclusion in the Official Catholic Directory. (*Id.* at ¶ 7). Mercy Health's Board of Directors consists of four nuns from the religious order of the Sisters of Mercy and is accountable to the Vatican Dicastery of the Congregation for the Institutes of Consecrated Life and Societies of Apostolic Life. (*Id.* at ¶ 8).

Mercy Health's Articles of Incorporation and Bylaws identify its purpose as continuing the healing acts of Jesus Christ in accordance with the doctrines and tenets of the Catholic Church.  (*Id.* at ¶ 9).  Mercy adheres to Ethical and Religious Directives for Catholic Health Care Services promulgated by the United States Conference of Bishops.  (*Id.* at ¶ 10).  Mercy Hospital St. Louis is a non-profit healthcare provider and facility, with tax-exempt status from the IRS, that receives monetary funding from the Catholic Church through its various Catholic Dioceses.  (*Id.* at ¶ 11).  Mercy's workplace is adorned with religious imagery and prayer occurs routinely and is also communicated over the public address system at least once a day.  (*Id.* at ¶ 12).

Defendant submitted in support of its summary judgment motion the Declaration of Kevin Minder, the Senior VP of Mission & Community Health for Mercy Health.  In his declaration, Dr. Minder states that the Ethical and Religious Directives for Catholic Health Care Services of the National Conference of Catholic Bishops ("Directives") provide that "[e]mployees of a Catholic health care institution must respect and uphold the religious mission of the institution and adhere to these Directives."  (ECF No. 17 ¶ 41).  Dr. Minder further states that, in accordance with the Directives, "Mercy's policies require all Mercy employees (i.e., co-workers) to uphold the [Directives]."  (*Id.* at ¶ 42).

Although Plaintiff did not deny any of the facts set forth in Defendant's SUMF, she did submit additional statements of fact, along with supporting exhibits.  (ECF No. 20 & Exs. 1-14).  The exhibits include Plaintiff's affidavit, in which she attests to the following.  (ECF No. 20, Ex 1).  Defendant employs individuals who do not believe in or practice Catholicism, and it holds itself out to the public as a secular institution.  The majority of Plaintiff's colleagues at the hospital were not practicing Catholics.  During Plaintiff's interview and training with Defendant, she did not receive Catholic instruction, and no one mentioned the Catholic faith until the implementation of the Mandate.  (*Id.* at ¶¶ 4-6).  During Plaintiff's employment with Defendant, she never

3

witnessed any Catholic worship service. (*Id.* at ¶ 13).

Plaintiff also submitted several income tax return documents filed by Mercy Health and Mercy Hospital East Communities for the 2017-2019 fiscal years, which show unrelated business taxable income and income (loss) from partnerships or S corporations.[1]   (ECF No. 20 & Ex. 2-7). In addition, Plaintiff submitted a "Frequently Asked Questions" ("FAQ") form issued by Defendant in connection with the Mandate.  The FAQ form contains a subsection related to exemptions.  As it pertains to religious exemptions, the form describes the process for submitting such requests and states: "Exemptions to the mandatory COVID-19 vaccination may also be granted if vaccination conflicts with the tenets of a sincerely held religious belief."  (ECF No. 20, Ex. 10 at 3).

In Plaintiff's opposition to defendant's motion, she argues that there exists a genuine dispute of material fact as to whether Defendant is a religious entity for exemption purposes under Title VII.  Plaintiff further argues that, because the religious exemption is an affirmative defense, the Court should find Defendant has waived this defense through its implementation of the Mandate or, in the alternative, is judicially estopped from asserting the defense.  (ECF No. 19).

## Legal Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  The substantive

---

[1] Plaintiff argues that the income tax returns show "Mercy received at minimum $3,207,180 in taxable income during the years 2017-2019," and that "Mercy had an equity interest in at least 28 for profit sub entities during 2019."  (ECF No. 19 at 13).

4

law determines which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. "'The nonmoving party may not rely on allegations or denials,' but rather 'must substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation or conjecture.'" *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in her favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## Discussion

Section 702 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-1, "exempts religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v.*

*Amos*, 483 U.S. 327, 329 (1987). Specifically, the "religious organization" exemption provides:

> This subchapter [i.e., Title VII, 42 U.S.C. §§ 2000-e, *et seq*.], shall not apply … to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a); *see also Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021, 1035

(N.D. Iowa Oct. 5, 2006) (discussing legislative history of Title VII exemption for religious

organizations).

"Because the statute does not define what constitutes a religious entity, courts have

considered a variety of factors when analyzing whether an employer falls within the scope of the

§ 2000e-1(a) exemption." *Boydston v. Mercy Hosp. Ardmore, Inc.*, No. CIV-18-444-G, 2020 WL

1448112, at *4 (W.D. Okla. Mar. 25, 2020). "In determining whether an institution or entity is

entitled to assert the exemption, the court must 'look at all the facts,' and in making this inquiry,

'it is appropriate to consider and weigh the religious and secular characteristics of the institution.'"

*Saeemodarae*, 456 F. Supp. 2d at 1036 (quoting *Hall v. Baptist Mem. Health Care Corp.*, 215 F.3d

618, 624 (6th Cir. 2000)).

Several district courts have already found other hospitals within the Mercy Health network

to be religious entities for exemption purposes under Title VII, including most recently this Court.

*See Burlison v. Mercy Hosp. S.*, No. 4:22-cv-01017-SEP, 2023 WL 4560796, at *4 (E.D. Mo. July

17, 2023) (granting defendant Mercy Hospital South's motion to dismiss; stating "courts have

routinely found that Mercy Hospital entities qualify for the religious-organization exemption from

Title VII"; collecting cases); *Boydston*, 2020 WL 1448112, at *6 (finding Mercy Hospital

Ardmore, Inc., Mercy Health Oklahoma Communities, Inc., and Mercy Health were religious

entities "exempt under § 2000e-1(a) from Plaintiff's Title VII religious discrimination and

retaliation claims."); *Jenkins v. Mercy Hosp. Rogers*, No. 5:19-CV-05221, 2020 WL 1271371, at

6

*2 (W.D. Ark. Mar. 17, 2020) ("Mercy is not a typical employer, however. The parties agree that Mercy is the sort of entity described in the religious organization exemption from Title VII."); *Saeemodarae*, 456 F. Supp. 2d at 1037 (finding there was no genuine issue of material fact that "both the nature of Mercy and the atmosphere at Mercy are unequivocally religious.") (quotations and citation omitted).

The Eighth Circuit Court of Appeals has not established guidance for determining whether an institution is a religious organization under Title VII. In *Boydston*, which Defendant cites, the district court was presented at the summary judgment stage with the issue of whether Mercy Hospital Ardmore, Inc. was a religious entity for exemption purposes under Title VII. In determining Mercy's exemption status, the *Boydston* court applied the test set forth in *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217, 226 (3d Cir. 2007), "which directs the weighing of 'all significant religious and secular characteristics' to determine whether the [entity's] purpose and character are primarily religious." *Boydston*, 2020 WL 1448112, at *4 (quoting *LeBoon*, 503 F.3d at 226)). In *LeBoon*, which Defendant also cites, the Third Circuit articulated nine factors as relevant to the determination of whether an organization is a religious one under Section 2000e-1(a):

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*LeBoon*, 503 F.3d at 226 (citations omitted). The *LeBoon* court cautioned that not all factors would be relevant in all cases, and that the weight given to each factor would vary from case to case. *Id.* at 227.

Plaintiff argues that *LeBoon* is overly broad and urges the Court to adopt a narrower approach discussed in *Spencer v. World Vision, Inc.*, 633 F.3d 723 (9th Cir. 2011), a Ninth Circuit per curiam opinion with no majority ruling, in which each member of the panel adopted a different rationale in reaching the result. (ECF No. 19 at 11-14). In *Spencer*, Judges O'Scannlain and Kleinfeld concurred that an entity is eligible for the religious exemption under Title VII, "at least, if it is organized for a religious purpose, is engaged primarily in carrying out that religious purpose, holds itself out to the public as an entity for carrying out that religious purpose, and does not engage primarily or substantially in the exchange of goods or services for money beyond nominal amounts." *Spencer*, 633 F.3d at 724. Plaintiff maintains that under this approach Defendant would not qualify for a religious exemption, due in part to its taxable income and investments, as reflected in the 2017-2019 income tax returns, and because Catholicism does not permeate the hiring and training processes of Defendant's workforce. (ECF No. 19 at 13). Plaintiff further argues that for similar reasons, even under the *LeBoon* test, Defendant does not qualify for a religious exemption. (*Id.* at 10-11).

The approach Plaintiff cites from *Spencer* has not been applied outside of the Ninth Circuit, whereas the *LeBoon* test has been followed by district courts in several other circuits. *See, e.g.*, *Scaffidi v. New Orleans Mission, Inc.*, 612 F. Supp. 3d 630, 636 (E.D. La. 2020) ("In the absence of guidance from the Fifth Circuit, the factors in [*LeBoon*] provide some guidance for determining whether an institution is a religious organization within the meaning of Title VII."); *Braun v. St. Pius X Parish*, 827 F. Supp. 2d 1312, 1317-18 (N.D. Okla. 2011) ("Both parties cite [*LeBoon*] for a list of factors courts often apply to judge whether an organization fits within [Title VII's] exemption."). The Court therefore concludes that the *LeBoon* test is the appropriate guiding framework to apply at this time. Under this framework, and for reasons similar to those set forth in *Boydston*, the Court finds Defendant is a religious entity exempt from religious discrimination

claims under Title VII.

As to the first *LeBoon* factor, it is undisputed that Defendant is a not-for-profit, tax-exempt entity. The Court finds that the taxable income and investments shown in the 2017-2021 income tax return documents, as cited by Plaintiff, do not convert Defendant's organizational status to a for-profit one. *See Boydston*, 2020 WL 1448112, at \*4 (first factor under *LeBoon* test was met where it was undisputed that defendants were not-for-profit entities).

With respect to the second factor, the provision of a secular service such as medical treatment is not, alone, determinative of whether the entity qualifies for a religious exemption. *See Saeemodarae*, 456 F. Supp. 2d at 1038 ("[I]t is not necessary that the activities of the organization be religious activities for either the organization or the activities to be exempt.") (quotations omitted). "Treatment of the sick through medical science and technology is an action that may be motivated by a religious purpose and reflect religious character." *Boydston*, 2020 WL 1448112, at \*5. Here, the Court finds Defendant's Articles of Incorporation and Bylaws, along with the Directives which Defendant's employees are required to uphold, demonstrate beyond dispute Defendant's religious motivation. Defendant's provision of a secular service is thus a less relevant factor in the Court's analysis because it is overshadowed by Defendant's readily apparent religious purpose and character.

Regarding the third and fourth factors, it is undisputed that Defendant's Articles of Incorporation state a religious purpose, and that Defendant is owned by, affiliated with, and financially supported by the Catholic Church. As to the fifth factor, it is similarly undisputed that Mercy Health's Board of Directors consists of four nuns from the religious order of the Sisters of Mercy and is accountable to the Vatican Dicastery of the Congregation for the Institutes of Consecrated Life and Societies of Apostolic Life.

With respect to the sixth and seventh factors, which the Court gives significant weight here,

9

the record reflects that Mercy's workplace is adorned with religious imagery and prayer occurs routinely and is also communicated over the public address system at least once a day. Plaintiff admits these facts. The Court finds Plaintiff's individual account of not receiving any training in, or exposure to, the Catholic faith while employed by Defendant fails to create a genuine dispute as to whether Defendant holds itself out to the public as sectarian, or whether Defendant regularly includes prayer or other forms of worship in its activities. *See Saeemodarae*, 456 F. Supp. 2d at 1037 ("Mercy's atmosphere … is permeated with religious overtones, as demonstrated by religious decoration and iconography through out the Hospital; handbooks and orientation materials for employees that inform them of Mercy's religious mission and religious foundation"; and "the regular practice of religious ceremonies, such as prayers and devotions broadcast on the hospital speaker system").

As to the ninth factor, Plaintiff urges the Court to find this factor determinative, pointing to her attestation that a majority of Defendant's employees are not Catholic. Even assuming Defendant's employees constitute "membership" for purposes of the *LeBoon* test, the Court is unconvinced. The Court finds the composition of Defendant's workforce to be a less relevant factor in the same way Defendant's provision of a secular service is less relevant—it does not subvert Defendant's readily apparent religious affiliation, purpose, and character. *Cf. Saeemodarae*, 456 F. Supp. 2d at 1038 ("nothing [Plaintiff] has cited is more than an isolated factor in what is an otherwise overwhelmingly religious context").

Finally, the Court finds Plaintiff's waiver argument fails. "The religious exemption is a limitation to Title VII's reach," and it "is not something that can be waived." *Jenkins*, 2020 WL 1271371, at *2 ("Mercy remains free to discriminate against its employees on the basis of religion, whether or not Mercy has adopted an internal policy claiming it will not do so.") (citations omitted). The Court similarly finds Plaintiff's estoppel argument unavailing. For support,

Plaintiff cites cases filed under the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), in which employers were estopped from asserting exemption as an affirmative defense in contesting employees' entitlement to FMLA leave, where the employers had explicitly guaranteed longer leave. These cases are inapposite to Plaintiff's, as the Mandate does not guarantee religious exemptions, it only provides for the submission and consideration of such requests, which "*may*" be granted.

For the foregoing reasons, the Court concludes that Defendant has met its burden to establish it is entitled to summary judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims are **DISMISSED with prejudice**.

A separate Judgment will accompany this Memorandum and Order.

**RONNIE L. WHITE**
**UNIED STATES DISTRICT JUDGE**

Dated this 9th day of February, 2024.

11

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA CONWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-1113 RLW |
| | ) | |
| MERCY HOSPITAL ST. LOUIS, | ) | |
| | ) | |
| Defendant. | ) | |

## JUDGMENT

In accordance with the Memorandum and Order of this same date and incorporated herein,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment is entered in favor of Defendant Mercy Hospital St. Louis and against Plaintiff Patricia Conway on all claims asserted in Plaintiff's Complaint.

Costs are assessed against Plaintiff.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNIED STATES DISTRICT JUDGE**

Dated this 12th day of February, 2024.