Appeal No. 24-1388

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

PATRICIA CONWAY,

Plaintiff-Appellant

vs.

MERCY HOSPITAL ST. LOUIS,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Missouri
Case Number 4:22-cv-01113-RLW

BRIEF OF APPELLEE

James M. Paul
OGLETREE, DEAKINS, NASH,
STEWART, AND SMOAK, P.C.
7700 Bonhomme Avenue, Ste. 650
St. Louis, Missouri 63105
314.802.3935 (tel)
314.802.3936 (fax)
james.paul@ogletree.com

Attorneys for Appellee Mercy Hospital St. Louis

## STATEMENT REGARDING ORAL ARGUMENT

This district court authoritatively addressed all the issued addressed to it. The parties' briefs in this Court are sufficient to make clear the district court's rulings do not merit reversal. Accordingly, Appellee Mercy Hospital St. Louis does not believe oral argument is necessary to affirm the district court's decision and judgment.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 28(a)(1) and 8th Circuit Rule 26.1A,

Plaintiff-Appellant Patricia Conway, makes the following disclosures:

1.      Plaintiff is not a subsidiary or affiliate of a publicly owned

corporation.

2.      There is no publicly owned corporation, not a party to the

appeal, that has a financial interest in the outcome.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ..................................................... I

Corporate Disclosure Statement.......................................................... II

Table of Contents .............................................................................. III

Table of Authorities............................................................................ V

Statement of the Issues Presented for Review .................................... 1

Statement of the Case ........................................................................ 3

Summary of the Argument ................................................................. 5

Argument............................................................................................ 7

        Standard of Review .................................................................. 7

    I.      Whether the District Court Erred in Granting
          Summary Judgment by Finding Mercy to be a
          Religious Organization, Exempt from Religious
          Discrimination and Retaliation Liability Under
          Title VII............................................................................. 9

          A.     Mercy is a well-recognized religious
                  organization for purposes of Title VII. .................. 10

          B.     Mercy established all of the applicable
                  *LeBoon* factors. ...................................................... 17

          C.     This Court Should Not Supplant the
                  *LeBoon* Test with the *Spencer* Test....................... 22

    II.     Whether the District Court Erred in Granting
          Summary Judgment When It Denied Conway's
          Argument that the CMS Vaccine Mandate
          Waives or Estops Mercy from Asserting
          Immunity as an Affirmative Defense.............................27

A. The CMS Mandate Does Not Require Mercy to Provide Religious Exemptions to COVID-19 Vaccination. ......................... 28

B. Affirmative Defenses of Statutory Exemption Cannot Be Waived. ............................ 30

C. Appellant's Estoppel Argument Fails as a Matter of Law. ....................................... 40

CONCLUSION ....................................................43

CERTIFICATE OF COMPLIANCE....................................44

CERTIFICATE OF SERVICE..............................................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  106 S.Ct. 2505 (1986) .............................................................................. 8

*Ark Encounter, LLC v. Parkinson*,
  152 F.Supp.3d 880 (E.D. Ky. 2016) ................................................. 31, 36

*Barber v. C1 Truck Driving Training, LLC*,
  656 F.3d 782 (8th Cir. 2011) ................................................................. 8

*Bear Creek Bible Church v. E.E.O.C.*,
  571 F.Supp.3d 571 (N.D. Texas, 2021) ............................................... 22

*Beasley v. Warren Unilube, Inc.*,
  933 F.3d 932 (8th Cir. 2019) ................................................................. 8

*Biden v. Missouri*,
  142 S.Ct. 647 (2022) ........................................................................ 2, 28

*Boswell v. Panera Bread Co.*,
  No. 4:14-CV-01833-AGF, 2016 WL 1161573 (E.D. Mo,
  March. 24, 2016) ................................................................................. 38

*Boydston v. Mercy Hospital Ardmore*,
  No. CIV-18-444-G, 2020 WL 1448112 (W.D. Okla. March
  25, 2020) ................................................................. 1, 11, 18, 19

*Braun v. St. Pius X Parish*,
  827 F.Supp.2d 1312 (N.D. Okla. 2011) ............................................... 22

*Brown v. Mercy Clinic East Communities*,
  Case No. 18SL-CCC03624 (Circuit Court of St. Louis
  County, May 19, 2023) ......................................................................... 13

*Burlison v. Mercy Hospital South*,
  Case No. 4:22-cv-01017-SEP, 2023 WL 4560796 (E.D. Mo.
  July 17, 2023) ....................................................................................... 11

v

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ................................................................ 7

*Cochran v. SSM-SLUH, Inc.,*
Case No. 4:23CV762 HEA, 2024 WL 2846672 (E.D. Mo.
June 5, 2024) ................................................................. 13, 28

*Ginsburg v. Concordia Univ.,*
2011 WL 41891 (D. Neb. Jan. 5, 2011) ........................... 31, 37

*Hall v. Baptist Memorial Health Care Corp.,*
215 F.3d 618 (6th Cir. 2000) ................................... 2, 31, 36

*Houston Cas. Co. v. Strata Corp.,*
915 F.3d 549 (8th Cir. 2019) ........................................... 7

*Jacobs v. Mercy Health,*
--- F.Supp.3d ----, No. 4:22-cv-01204-AGF, 2024 WL
894861 (E.D. Mo. March 1, 2024) ................................. 1, 11

*Jenkins v. Mercy Hospital Rogers,*
No. 5:19-CV-05221, 2020 WL 1271371 (W.D. Ark. March
17, 2020) ................................................................. *passim*

*Layton v. Mercy Hospital East Communities,*
692 S.W.3d 426 (Mo. App. Ct. E.D. June 2024) ................ 12

*LeBoon v. Lancaster Jewish Community Center Ass'n,*
503 F.3d 217 (3d Cir. 2007) ....................................... *passim*

*Mennen v. Easter Stores,*
951 F. Supp. 838 (N.D. Iowa 1997) .................................. 39

*Ockletree v. Franciscan Health System,*
2012 WL 6146673 (W.D. Wash., Dec. 11, 2012) ................ 34

*Reeves v. Sanderson Plumbing Prods., Inc.,*
120 S.Ct. 2097 (2000) ..................................................... 7

*Saeemodarae v. Mercy Health Services,*
456 F.Supp.2d 1021 (N.D. Iowa 2006) ........................ 12, 31

*Scaffidi v. New Orleans Mission, Inc.*,
    612 F.Supp.3d 630 (E.D. La. 2020)......................................22

*Shirrell v. St. Francis Medical Center*,
    793 F.3d 881 (8th Cir. 2015)................................................7

*Smith v. Angel Food Ministries, Inc.*,
    611 F.Supp.2d 1346 (M.D. Ga. 2009) ................................22

*Smith v. Golden China of Red Wing, Inc.*,
    987 F.3d 1205 (8th Cir. 2021)........................................9, 19

*Spencer v. World Vision, Inc.*,
    633 F.3d 723 (9th Cir. 2011)...................................... *passim*

*Torgerson v. City of Rochester*,
    643 F.3d 1031 (8th Cir. 2011)........................................8, 9

*Wertz v. Mercy Health*,
    No. 4:23-CV-00579-NCC, 2024 WL 3427218 (E.D. Mo.
    July 16, 2024).................................................................1, 11

*Young v. St. John's Mercy Health Sys.*,
    No. 4:10CV824 TIA, 2011 WL 9155 (E.D. Mo. Jan. 3,
    2011)....................................................................................13

**Statutes**

RSMo Section 288.215.1........................................................42

**Other Authorities**

86 Fed. Reg. 61555-01 (amending 42 C.F.R. pts. 416, 418,
    441, 460, 482-86, 491, 494) .................................2, 28, 30, 33

88 Fed. Reg. 12842 (amending 41 C.F.R. pt. 60-1) ..........26, 27

Devin Watkins, *Pope Francis urges people to get vaccinated
    against Covid-19*, Vatican News, (Aug. 18, 2021),
    https://www.vaticannews.va/en/pope/news/2021-08/pope-
    francis-appeal-covid-19-vaccines-act-of-love.html ..............34

Fed. R. Civ. P. 56(a)...................................................................................8

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.  Whether the District Court erred in granting summary judgment by finding Mercy to be a religious organization, exempt from religious discrimination and retaliation liability under Title VII?

*LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217 (3d Cir. 2007).

*Boydston v. Mercy Hospital Ardmore,* No. CIV-18-444-G, 2020 WL 1448112 (W.D. Okla. March 25, 2020)

*Jacobs v. Mercy Health*, --- F.Supp.3d ----, No. 4:22-cv-01204-AGF, 2024 WL 894861 (E.D. Mo. March 1, 2024)

*Wertz v. Mercy Health*, No. 4:23-CV-00579-NCC, 2024 WL 3427218 (E.D. Mo. July 16, 2024)

II. Whether the District Court erred in granting summary judgment when it denied Conway's argument that the CMS Vaccine Mandate waives or estops Mercy from asserting its religious organization status as an affirmative defense?

*Jenkins v. Mercy Hospital Rogers*, No. 5:19-CV-05221, 2020 WL 1271371 (W.D. Ark. March 17, 2020)

1

*Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000)

*Biden v. Missouri,* 142 S.Ct. 647 (2022)

*Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination,* 86 Fed. Reg. 61555-01 (amending 42 C.F.R. pts. 416, 418, 441, 460, 482-86, 491, 494)

## STATEMENT OF THE CASE

During the COVID-19 pandemic, Appellant Patricia Conway ("Conway") requested a religious exemption from the COVID-19 vaccine, but Appellee Mercy Hospital St. Louis ("Mercy") denied her request pursuant to its mandatory vaccination policy for healthcare workers and other employees. After Conway still refused to get vaccinated, Mercy terminated her employment pursuant to its policy. In October 2022, Conway brought claims of religious discrimination and retaliation under Title VII against Appellee Mercy Hospital St. Louis ("Mercy"). Mercy promptly raised its affirmative defense that it was exempt from liability for religious discrimination under Title VII as it is a religious organization. The parties agreed to bifurcated discovery and to present this issue to the U.S. District Court for the Eastern District of Missouri before addressing the merits of Conway's claims.

Through its summary judgment motion and supporting documents, Mercy put forth uncontroverted evidence that it is a "religious organization" for purposes of Title VII, making it exempt from liability for religious discrimination and retaliation claims brought pursuant to that statute. Conway either expressly or effectively admitted all of the

material facts demonstrated by Mercy, and the resulting uncontroverted facts in the record show that Mercy is owned and operated by the Roman Catholic Church as a *public juridic personality* (or legal entity of the Church); that Mercy is a non-profit healthcare provider; that it is governed by the dictates and doctrines of the Roman Catholic Church; and that its religious identity and mission are publicly displayed and communicated in its daily operations, including through daily prayer and religious imagery.

On February 12, 2024, the United States District Court for the Eastern District of Missouri granted summary judgment in favor of Mercy on Conway's religious discrimination and retaliation claims based on Mercy's religious organization status, which exempts it from liability for religious discrimination under Title VII. *See* App.[1] 48-58, R. Doc. 34.

Conway appeals and erroneously argues that there is a dispute of material fact and/or that Mercy waived any defense based on its status as a religious organization.

---

[1] "App." refers to Appellant's Appendix submitted with her brief.

## SUMMARY OF THE ARGUMENT

Appellant Conway refused to take the COVID-19 even after Mercy denied her religious exemption request. As a result, Mercy's mandatory vaccination policy (which complied with the federal Centers for Medicare & Medicaid Services' vaccine mandate) required the termination of Conway's employment.

Conway filed a religious discrimination claim against Mercy pursuant to Title VII of the Civil Rights Act, but Mercy is exempt from such claims because it is a religious corporation. Numerous court decisions have applied the factors used to make this determination to Mercy and unanimously found that Mercy meets the requirements and is exempt from claims like that brought by Plaintiff.

Conway also argues Mercy waived or is estopped from using its statutory exemption provided by Title VII. However, Mercy cannot waive the statutory defense. Even if the exemption can be waived, neither implementing a vaccination policy that provides a possibility of religious exemptions or that complies with a federal mandate can be the basis for waiver or estoppel.

Conway does not (and cannot) controvert all of the material facts properly introduced into the record in the district court through its summary judgment motion. Because Conway has no evidence to support her claims in this appeal and cannot overcome Mercy's demonstrated defense, this Court should affirm the district court's order granting summary judgment against Conway and in favor of Mercy.

# ARGUMENT

## STANDARD OF REVIEW

This Court reviews summary judgment *de novo,* applying the same standard as the district court. *Houston Cas. Co. v. Strata Corp.*, 915 F.3d 549, 551 (8th Cir. 2019); *Shirrell v. St. Francis Medical Center*, 793 F.3d 881, 885 (8th Cir. 2015). Summary judgment may be affirmed for any reason supported by the record. *Id.*

Plaintiff cites outdated law to suggest the summary judgment rules are different in employment discrimination cases. They are not. "Summary judgment procedure is . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The Supreme Court has also clarified that courts do not "treat discrimination differently from other ultimate questions of fact." *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2109 (2000) (internal punctuation and citation omitted).

The Eighth Circuit itself long-ago clarified that there is no "discrimination case exception" to the application of summary judgment.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011); *see also Beasley v. Warren Unilube, Inc.,* 933 F.3d 932, 936 (8th Cir. 2019) (citing *Torgerson*). Contrary to Conway's assertion, summary judgment is not a procedural tool that should be using sparingly. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Torgerson*, 643 F.3d at 1043 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case, and a dispute is "genuine" only if the evidence is such that a reasonable trier of fact could resolve the issue in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986). "To survive a motion for summary judgment, the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driving*

*Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (citing *Putnam v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)).

"[I]t is black letter summary judgment law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion." *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021) (citing *Keiran v. Home Cap., Inc.*, 858 F.3d 1127, 1132 (8th Cir. 2017)). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Conway failed to demonstrate any genuine issue for trial based on the uncontroverted facts in the summary judgment record below.

# I. WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BY FINDING MERCY TO BE A RELIGIOUS ORGANIZATION, EXEMPT FROM RELIGIOUS DISCRIMINATION AND RETALIATION LIABILITY UNDER TITLE VII.

The central issue in this matter is whether Mercy is a religious organization, exempting it from Title VII liability for religious discrimination. The district court properly found that Mercy is a religious

organization, exempt from religious discrimination under Title VII, and granted summary judgment in Mercy's favor. As there are no genuine disputes of material fact, the district court's grant of summary judgment must be affirmed.

**A. Mercy is a well-recognized religious organization for purposes of Title VII.**

In the summary judgment record below, Mercy clearly established itself as an exempt religious organization pursuant to the test laid out in *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217 (3d Cir. 2007). In *LeBoon*, the Court identified nine factors for consideration in determining "religious corporation" status under Title VII:

> (1) whether the entity operators for a profit, (2) whether it produces a secular product, (3) whether the entities articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*Id.* at 226. As explained below, Mercy established all of these factors to the extent they are appliable.

Prior to and after the district court decision below, several other court decisions determined that Mercy is a religious organization and, therefore, exempt from religious discrimination claims under Title VII:

- *Wertz v. Mercy Health*, No. 4:23-CV-00579-NCC, 2024 WL 3427218, *7-8 (E.D. Mo. July 16, 2024) (stating "[i]n congruence with the decisions in this district and several other districts, examination of the record before the Court under the *LeBoon* framework clearly establishes that Defendants are exempt, as a religious organization, under Title VII…") (unpublished);

- *Jacobs v. Mercy Health*, --- F.Supp.3d ----, No. 4:22-cv-01204-AGF, 2024 WL 894861, at *4-5 (E.D. Mo. March 1, 2024) (holding "Mercy Health is a religious organization and Title VII's 2000e-1(a) religious organization exemption applies.");

- *Burlison v. Mercy Hospital South,* Case No. 4:22-cv-01017-SEP, 2023 WL 4560796, at *3 (E.D. Mo. July 17, 2023) (holding Mercy "is a religious organization exempt from Title VII religious discrimination and retaliation claims") (unpublished);

- *Boydston v. Mercy Hospital Ardmore,* No. CIV-18-444-G, 2020 WL 1448112, at *6 (W.D. Okla. March 25, 2020) ("[T]he Court

determines as a matter of law that Defendants are exempt under § 2000e-1(a) from Plaintiff's Title VII religious discrimination and retaliation claims) (unpublished);

- *Jenkins v. Mercy Hospital Rogers*, No. 5:19-CV-05221, 2020 WL 1271371, at *2 (W.D. Ark. March 17, 2020) ("As a religious corporation, Mercy remains free to discriminate against its employees on the basis of religion…") (unpublished); and

- *Saeemodarae v. Mercy Health Services*, 456 F.Supp.2d 1021, 1039 (N.D. Iowa 2006) (holding "Mercy is a 'religious organization' entitled to assert the exemption to Title VII religious discrimination claims, including retaliation claims, set forth in § 2000e-1(a).

Three other court decisions used a similar analysis to determine that the Missouri Human Rights Act's ("MHRA") definition of "employer" also excluded Mercy based on its religious organization status and exempted Mercy from discrimination claims brought under state law:

- *Layton v. Mercy Hospital East Communities*, 692 S.W.3d 426, 429-34 (Mo. App. Ct. E.D. June 2024) (applying similar factors and holding Mercy to be an entity operated by the Catholic Church and excluded from coverage under the Missouri Human Rights Act);

- *Brown v. Mercy Clinic East Communities*, Case No. 18SL-CCC03624, fn 1 (Circuit Court of St. Louis County, May 19, 2023) (holding that Mercy is a religious organization and excluded from the Missouri Whistleblower Protection Act's definition of "employer" because that statute uses the same definition as does the MHRA) (unpublished); Add. 10-15; and

- *Young v. St. John's Mercy Health Sys.*, No. 4:10CV824 TIA, 2011 WL 9155, at *4 (E.D. Mo. Jan. 3, 2011) (Mercy is not an "employer" as defined by the MHRA because it is owned and operated by a religious organization) (unpublished).

Moreover, recently and for the same reasons, the similarly-structured SSM Health System also passes the *LeBoon* test and qualifies as a religious organization exempt from Title VII religious discrimination claims. *Cochran v. SSM-SLUH, Inc.*, Case No. 4:23CV762 HEA, 2024 WL 2846672, at *3-5 (E.D. Mo. June 5, 2024) (unpublished).

### 1. Articles of Incorporation and Bylaws

Mercy's own Articles of Incorporation and Bylaws identify its religious identity and purpose, as the Articles of Incorporation state that Mercy Health "shall operate (i) to serve the mission of the Roman

Catholic Church … to succeed and carry on the health care ministries conducted by the Institute of the Sisters of Mercy of the Americas…". Aple. App.[2] 87; R. Doc. 17-3 at 4. The Articles of Incorporation and Bylaws also required Mercy to adhere to the ethical and moral teachings of the Catholic Church as set forth in the *Ethical and Religious Directives for Catholic Health Care Services* ("ERDs"). Mercy Health's Bylaws provide that Mercy operates "to carry forward the healing ministry of Jesus in the Church through the management, ownership, or sponsorship of health care facilities, programs and services consistent with the teachings and laws of the Church regarding Catholic health services and with traditions, values and enduring concerns of the Sisters of Mercy. . . ." Aple. App. 53; R. Doc. 17-2, p. 9.

### 2. Mercy is a Public Juridic Person of the Catholic Church, accountable to the Vatican.

Mercy was created and exists to serve Mercy Health Ministry, a public juridic person that is a recognized, constitutive part of the Catholic Church. App. 31-32 ¶¶1, 4-6, 9, 10; R. Doc. 16, pp. 1-2 ¶¶1, 4-6, 9, 10. Its expressly stated corporate purpose is to further the healing ministry of

---

[2] "Aple. App." refers to Appellee's Appendix filed simultaneously herewith.

Jesus as practiced by the Catholic Church. App. 32 ¶¶6, 9; R. Doc. 16, p. 2 ¶¶6, 9. Its proclaimed Mission and Values demonstrate its Catholic identity and purpose. App. 32-33 ¶¶6, 9, 12; R. Doc. 16, pp. 2-3 ¶¶6, 9, 12.

Mercy's Canonical Statutes make its stated purpose to "embody the mission of healing ministry of Jesus in the Roman Catholic Church through the management, ownership or sponsorship of healthcare services [.]" App. 31 ¶1; R. Doc. 16 at 1 ¶1; Aple. App. 104-14; R. Doc. 17-3, pp. 21-31. The Members of Mercy Health Ministry must "operate in accordance with the teaching, discipline, and laws of the Roman Catholic Church." *Id*. To ensure Mercy Health Ministry satisfies its obligations under Canon law, it is "subject to and accountable to the Holy See" in that it must regularly report to the Vatican explaining how the operations of its sponsored corporations are in keeping with the teachings of the Church and the goals of the Ministry. *Id*. The reports describe Mercy Health Ministry's current operations and efforts to promote Catholicism in its executing its overarching mission and through day-to-day acts. App. 32 ¶8; R. Doc. 16 at 2 ¶8; Aple. App. 115-86; R. Doc. 17-3, pp. 32-64; R. Doc. 17-4, pp. 1-39.

### 3. Mercy is 501(c)(3) non-profit entity.

Mercy is a non-profit healthcare provider. App. 32-33 ¶11; R. Doc. 16, pp. 2-3 ¶11. It receives financial support from the Catholic Church via its dioceses, and Mercy provides funding to the Catholic Church via the same avenue. *Id*. Mercy Health and its affiliates (including Mercy Hospital St. Louis) are also listed in the Official Catholic Directory, which identifies "religious institutions operated by the Roman Catholic Church in the United States" and determines Mercy's tax-exempt status. App. 31 ¶2; R. Doc. 16, p. 31 ¶2; Aple. App. 527-38; R. Doc. 17-8, pp. 24-35. Mercy's Bylaws state that Mercy is "organized exclusively for religious, charitable, scientific and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended …". App. 32 ¶9; R. Doc. 16, p. 2 ¶9; Aple. App. 50-74; R. Doc. 17-2, pp. 6-30.

### 4. Mercy's Catholic identity is publicly displayed and practiced.

Reflecting its Catholic operations, Mercy has a cross on its logo, religious symbols within its facilities, and on-site chapels for prayer. App. 33 ¶12; R. Doc. 16, p. 3 ¶12; Aple. App. 482-526; R. Doc. 17-7, pp. 44-65; R. Doc. 17-8, pp. 1-23. Prayer is a regular part of the work environment. App. 33 ¶12; R. Doc. 16, p. 3 ¶12; Aple. App. 481; R. Doc. 17-7, p. 43. Prayers are communicated over the public address system and often said

before meetings throughout the facility. App. 33 ¶12; R. Doc. 16, p. 3 ¶12. Catholic religious services, including Mass and other sacraments (anointing of the sick and the Eucharist), are also made available at Mercy's facilities, including Mercy Hospital St. Louis. *Id.*; Aple. App. 4582-503; R. Doc. 17-7, pp. 44-65.

Further, new Mercy employees undergo a training that teaches them about Mercy's status as "a ministry of the Catholic Church," its Catholic heritage, and its obligation to practice medicine consistent with the ERDs. App. 33 ¶12; R. Doc. 16, p. 3 ¶12; Aple. App. 268-456; R. Doc. 17-5; R. Doc. 17-6; R. Doc. 17-7, pp. 1-18.

## B. Mercy established all of the applicable *LeBoon* factors.

Conway argues that Mercy is not a religious organization, and therefore, not entitled to exemption from religious discrimination and retaliation claims under Title VII's religious organization exemption. Yet, Conway offers no evidence to support this theory or contradict the numerous undisputed facts in the record or the well-established precedent of other courts determining that Mercy is a religious organization under Title VII. Instead, Conway asks this Court to adopt a defunct framework and test for religious organization status from the

Ninth Circuit Court of Appeals, disregarding the more appropriate framework presented by and adopted by other federal district and appellate courts.

Just as the factors were applied to Mercy in the *Boydston* decision, Mercy satisfied factors one through seven here;[3]

- As to the first factor, it is undisputed that Mercy Health and its affiliates are not-for-profit entities.

- Regarding the third and fourth factors, it is undisputed that Mercy Health's Articles of Incorporation and Bylaws state a religious purpose for the organization and that Defendants are affiliated with the Sisters of Mercy (a religious order of the Roman Catholic Church) and Mercy Health Ministry (a health care minister with public juridic personality).

- Regarding the fifth factor, it is undisputed that the Sisters of Mercy order has representatives on the Mercy Health Board of Directors.

- As to the sixth factor, the record reflects that Mercy Health and its affiliates hold themselves out to the public as sectarian

---

[3] Factors 8 and 9 are inapplicable.

through their display of religious symbols in their facilities and through their sectarian mission statement and values statement displayed on the Mercy public website.

- Regarding the seventh factor, …employees are exposed to prayer at some meetings.

- Returning to the second factor, …[T]reatments of the sick through medical science and technology is an action that may be motivated by a religious purpose and reflect a religious character.

Aple. App. 3-709; R. Doc. 17-17-9; *see also Boydston, supra,* at *4-5*;*

Conway takes issue with *LeBoon's* multi-factor framework, alleging it is overly broad and allows healthcare institutions to use "their affiliations as cover for religious discrimination in secular employment." *See* Appellant's Brief, p. 18. Once again, Conway's conclusory language and self-serving affidavit allegations fail to amount to evidence or any dispute of material fact that would cast doubt on the lower court's determination and ruling. *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021) ("[I]t is black letter summary judgment

law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion.").

Conway asserts there are disputes of fact by trying to fit her unsupported (and in some cases, misguided) legal theories into the test. Specifically, Conway argues that Mercy holds itself out as a secular organization and provides a secular product. *See* Appellant's Brief, p. 16. Nearly all of Conway's proffered evidence is nothing more than conclusory and self-serving statements, including unsupported and false assertions such as "the majority of [Mercy's] workers had no religious interaction with Mercy at all." *See* Appellant's Brief, p. 21. Additionally, based on her own conclusory and self-serving affidavit and fundamental misunderstanding of endowments and investment products, Conway attempts to create a dispute of material fact by claiming Mercy is a secular institution, offering a secular product, and operating as a for-profit entity.

However, as already determined by many courts, Mercy is not secular, as it holds itself out as a religious organization through its mission statement, the use of religious imagery, religious practices such as prayer, and many other elements of religiosity that are fundamentally

and foundationally interwoven into Mercy's identity and operation. *See Supra I(A)*. These facts are undisputed by Conway. *See* App. 35-42; R. Doc. 20.

Even its administration of health care is religious in nature, as demonstrated by its adherence to the *Ethical and Religious Directives for Catholic Health Care Services*, which are promulgated by the United States Conference of Bishops. *See* Aple. App. 193-267; R. Doc. 17-4 46-120. These are directives from the Catholic Church, instructing Catholic healthcare entities on providing healthcare services. The *Ethical and Religious Directives* prohibit Catholic hospitals and healthcare providers, like Mercy, from performing healthcare services that would run afoul of Catholic religious tenets and ideology. For example, birth control and other reproductive services (such as infertility treatments and vasectomies) are not performed at Mercy or by Mercy providers. These are examples of the Catholic Church's control over the operation and administration of healthcare. *Id*.

Clearly, this is not secular healthcare. Moreover, Conway does not dispute this fact, nor the fact that Mercy is owned and operated by the

Roman Catholic Church, as a *public juridic person* of the Church. *See Supra I(A).*

LeBoon is the proper framework (as the district court concluded), and Mercy satisfies the requirements for religious organization status and it qualification for the Title VII exemption from liability for religious discrimination claims.

### C. This Court Should Not Supplant the *LeBoon* Test with the *Spencer* Test.

Conway's theory on appeal is that this Court should abandon the *LeBoon* test and the litany of other court decisions addressing the exact same issue,[4] and, instead, employ the framework proposed by the Ninth Circuit in *Spencer v. World Vision, Inc.* 633 F.3d 723 (9th Cir. 2011). Importantly, even if *Spencer* was applied, its "three-factor test" variation would also dictate the same result here. Nonetheless, *Spencer* is not

---

[4] The *LeBoon* factors are well-recognized by the federal courts. In addition to the above Mercy-related (and SSM-related) decisions, other decisions have applied the *LeBoon* test. *See, e.g.*, *Scaffidi v. New Orleans Mission, Inc.*, 612 F.Supp.3d 630 (E.D. La. 2020); *Bear Creek Bible Church v. E.E.O.C.*, 571 F.Supp.3d 571 (N.D. Texas, 2021); *Braun v. St. Pius X Parish*, 827 F.Supp.2d 1312 (N.D. Okla. 2011); *Smith v. Angel Food Ministries, Inc.*, 611 F.Supp.2d 1346, 1350-51 (M.D. Ga. 2009).

recognized by this Court, or any other court outside of the Ninth Circuit. In fact, not even any other **Ninth Circuit** decision has adopted *Spencer*.

The tests proposed in *Spencer* have not gained traction nor has it been utilized beyond the Ninth Circuit, as there was no consensus on what the factors or test should be. Even within *Spencer*, the panel disagreed as to the proper test to apply, as all three judges articulated different tests. Judge O'Scannlain articulated the three part test as described herein: (1) whether the entity was organized for a religious purpose, (2) was engaged in activity consistent with and in furtherance of that religious purpose, and (3) held itself to the public as religious. *Spencer*, 633 F.3d at 734. While Judge Kleinfeld believed that a fourth factor should be added: whether the organization had to refrain from engaging "primarily or substantially in the exchange of goods or services for money beyond nominal amounts." *Id.* at 748. Lastly, Judge Berzon's dissent argued that the test should only be whether the primary activity of a purportedly religious organization consists of voluntary gathering for prayer or religious learning. *Id.* at 763.

Somehow believing the test is different or better, Conway urges this Court to adopt the test articulated in *Spencer* and relies almost

exclusively on a hypothetical in a concurring opinion in *Spencer*. However, Conway seemingly ignores the Ninth Circuit's actual holding in *Spencer*, *i.e.*, that World Vision, Inc. ***qualified as an exempt religious organization***.

In the end, the Ninth Circuit upheld a summary judgment decision and affirmed the defendant's status as a religious organization. *Spencer v. World Vision, Inc.*, 633 F.3d 723, 741 (9th Cir. 2011). In its attempt to avoid certain constitutional concerns – and noting as *LeBoon* did that all factors are not weighed the same or dispositive – *Spencer* pared down the *LeBoon* factors and offered three factors for considering religious organization status: (1) whether the entity was organized for a religious purpose; (2) whether the entity engaged in acts in furtherance of its religious purposes; and (3) whether it holds itself out to the public as religious. *Id.* at 734. Accordingly, *Spencer* did not wholly abandon *LeBoon* or invalidate it; rather, it simply attempted to condense the factors based upon the specific circumstances and facts presented.

Under Conway's theory in advocating for *Spencer*, Conway argues that Mercy would not qualify as a religious organization because it had equity interests in for-profit sub entities, the majority of its employees

are alleged to be "not Catholic," and that Plaintiff supposedly was employed by Mercy for-profit entities. *See* Appellant's Brief, p. 20-21. These allegations are baseless and unsupported in any way. In fact, Conway ***expressly admitted*** that Mercy Hospital St. Louis – the entity Conway alleges employed her – is a non-profit entity. *See* App. 35-42; R. Doc. 20. The 28 entities in which Conway claims Mercy has an equity interest are ***investment funds***, which Mercy uses to supplement its endowment in order to better and more broadly provide healthcare services to those who cannot afford them – consistent with its Catholic mission and identity. *See* Aple. App. 922 ¶¶9-12; R. Doc. 23-1, p. 3 ¶¶9-12. These are not for-profit entities owned or operated by Mercy. *Id.* A simple reading of Mercy's tax documents (as a 501(c)(3) non-profit) demonstrates this fact. Yet, Conway either misunderstands those tax records or is deliberately misrepresenting them as Mercy entities for purposes of its argument.

Conway also falsely claims that *Spencer* "is generally favored by the federal government." Appellant's Brief, p. 19. Not only is this statement patently false, but it deliberately overstates and generalizes the acts of one agency (the OFCCP) by equating it to the entirety of the federal

government. Despite Conway's hyperbole, the fundamental fact that Conway has deliberately chosen to conceal is that the same agency she relies upon (the OFCCP) expressly rejected *Spencer* and rescinded the very guidance Conway cites. *See* Recission of Implementing Legal Requirements Regarding the Equal Opportunity Clause's Religious Exemption Rule, 88 Fed. Reg. 12842, 12845, 12848 (amending 41 C.F.R. pt. 60-1); Add. 7-8.

The OFCCP press release cited by Conway ("Implementing Legal Requirements Regarding the Equal Opportunity Clause's Religious Exemption") was rescinded on March 1, 2023 – more than one year before Conway filed her brief. *See Id*. at 12842; Add. 6. In its recission publication, the OFCCP stated the "2020 rule, however, adopted a religious employer test that no court has applied under Title VII." *Id*. (citing 85 Fed. Reg. 79324-01, 79371). The OFCCP recission further stated that "the religious employer test adopted by the 2020 rule cannot be squared with Executive Order 13279's incorporation of Title VII as the touchstone for the Executive Order 11246 religious exemption." *Id*. at 12845; Add. 7. Furthermore, the recission clarified that:

> OFCCP reiterates that recission will simply return the agency
> to its longstanding approach to the religious exemption, which

entails following Title VII principles and case law – that is, interpreting and applying the religious exemption in accordance with precedents in which courts have not impermissibly undermined employers' religious freedom.

*Id.* at 12857; Add. 9. Finally, the recission expressly stated that "nothing in the 2020 rule or its preamble may be relied on as a statement of OFCCP's interpretation or application of the Executive Order 11246 religious exemption or relevant religious liberty authorities." *Id.* Conway fails to recognize or advise this Court of the recission of this publication, which completely undercuts Conway's claim that the federal government "favors" using *Spencer*. It does not, and this recission letter demonstrates that *Spencer* is not favored, preferred, or even to be considered as a workable framework for the issues presented here.

## II. WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN IT DENIED CONWAY'S ARGUMENT THAT THE CMS VACCINE MANDATE WAIVES OR ESTOPS MERCY FROM ASSERTING IMMUNITY AS AN AFFIRMATIVE DEFENSE.

Despite Conway's gross and intentional misreading of the CMS Vaccine Mandate's requirements, Conway fails to acknowledge the established precedent holding that Mercy cannot waive its affirmative defense under Title VII's statutory exemption. "Once an entity is determined to be a 'religious organization,' courts do not inquire into the

organization's justifications behind its employment decisions." *Cochran*, Case No. 4:23CV762 HEA, 2024 WL 2846672, at *2 (*citing Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989)).

Mercy has already (and repeatedly) been determined to be a religious organization under Title VII. Mercy's actions regarding vaccination exemption requests (including Plaintiff's request), therefore, are immaterial because such actions cannot strip Mercy of its religious organization status for purposes of Title VII.

### A. The CMS Mandate Does Not Require Mercy to Provide Religious Exemptions to COVID-19 Vaccination.

Mercy does not dispute that it was subject to the CMS Mandate regarding COVID-19 vaccination. Indeed, Mercy also had no choice other than to implement a vaccine mandate. The federal Centers for Medicare & Medicaid Services issued a COVID-19 vaccination mandate ("CMS Mandate") on November 5, 2021, which covered Mercy and its staff. The CMS Mandate was upheld by the United States Supreme Court on January 13, 2022. *Biden v. Missouri,* 142 S.Ct. 647 (2022). Nothing in the CMS Mandate requires employers, such as Mercy, to grant exemptions or accommodations that are inconsistent with Federal law or employer's rights thereunder. *See* 86 Fed. Reg. 61555-01, 61569-61572;

Add. 1-5. By complying with the federal CMS Mandate, Mercy has not waived or abandoned its statutory exemption defense provided by Title VII. Instead, it offered its employees an avenue to seek accommodation or exemption from receiving COVID-19 vaccination (as required by the CMS Mandate) for circumstances that would necessitate such an exemption – including for medical or religious reasons.

Conway deliberately misstates the CMS Mandate's requirements concerning religious and medical exemptions or accommodations to receiving the COVID-19 vaccine. The CMS Mandate did not require employers such as Mercy to grant or provide exemptions to the COVID-19 vaccination requirement merely because exemptions are requested. The trial court expressly noted this in its Order granting summary judgment: "the Mandate does not guarantee religious exemptions." *See* App. 58; R. Doc. 34, p. 11. Conway fails to acknowledge this and mistakenly (or deliberately) believes that the "CMS Rules" (as labeled by Conway) required covered employers to grant all vaccination exemption requests or extinguished Mercy's religious organization status and exemption under Title VII. This is patently false.

Yet, Conway continues to assert that the mere request for an exemption to receiving the COVID-19 vaccination suffices and creates an obligation that the employer must grant such exemption. This, of course, misses then entire purpose of the CMS Mandate, which was to require vaccination of as many healthcare workers as possible to prevent the spread and outbreak of COVID-19 in its facilities and around sick patients. Obviously, as the Mandate expressly states, "employers must comply with applicable Federal anti-discrimination laws" and grant an exemption when it would be a legally-required reasonable accommodation. *See* Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555-01 (amending 42 C.F.R. pts. 416, 418, 441, 460, 482-86, 491, 494); Add. 1-5. But, exemptions were supposed to be rare (i.e., only when actually "legally-required") and vaccination was the default.

### B. Affirmative Defenses of Statutory Exemption Cannot Be Waived.

None of Mercy's actions that were compelled by the CMS Mandate are relevant here for purposes of establishing the religious organization exemptin. Nor could such actions serve as a waiver since were were legally-imposed on Mercy by the federal government. Nonetheless,

Plaintiff tries to use Mercy's compliance with the federal CMS Mandate against it as a waiver, essentially making the same argument that was made in *Jenkins*. Not only can Mercy not waive its exemption as a religious organization under Title VII, but compliance with the federal CMS Mandate cannot result in a forfeiture or waiver of Mercy's religious organization status and the exemption provided to Mercy by Title VII.

"Once Congress stated that '[t]his title shall not apply' to religiously-motivated employment decisions by religious organizations,' neither party could expand the statute's scope." *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 625 (6th Cir. 2000). "[T]he exception for religious organizations in Title VII 'is a structural limitation imposed on the government by the Religion Clauses, a limitation that can never be waived.'" *Ark Encounter*, 152 F.Supp.3d at 915 n.25; *see also Ginsburg v. Concordia Univ.*, 2011 WL 41891, at *6 (D. Neb. Jan. 5, 2011) (stating that "because an institution qualifies for the exemptions under Title VII, it cannot waive its right to assert protection under those exemptions"); *see LeBoon*, 503 F.3d at 229-30; *Saeemodarae*, 456 F.Supp.2d at 1039.

It is clear that Mercy has not waived (and, indeed, **cannot waive**) its religious organization exemption by following the federal CMS

Mandate. Accordingly, Mercy is entitled to summary judgment in its favor based on its qualification for the Title VII religious organization exemption.

Just as Plaintiff's waiver argument fails, so too does her estoppel argument. Plaintiff merely duplicates the same argument she makes regarding waiver, but tries to present it under a different name. Plaintiff's theory is that Mercy is estopped from asserting its religious organization exemption defense because Mercy's Vaccination Policy "provided that the religious exemptions would be granted provided a request was timely submitted." *See* Aple. App. 760: R. Doc. 19, p. 8.

Not only is this an improper backdoor attempt to sidestep the threshold dispositive issue involving Title VII's religious organization exemption, but it is also a false statement and a misrepresentation of Mercy's policy. In fact, Plaintiff did not even proffer a copy of Mercy's COVID-19 Vaccination Policy into the summary judgment record; she only attaches a copy of the Frequently Asked Questions ("FAQs") associated with the Policy. *See* Aple. App. 891-96; R. Doc. 20-10. Mercy, however, introduced the Policy into the summary judgment record and

Conway does not (and could not) controvert it or its terms. *See* Aple. App. 920-23; R. Doc. 23-1; Aple. App. 1510-23; R. Doc. 23-9.

Neither the FAQs nor the Policy itself state that exemptions would be granted provided a request was timely submitted. Rather, the Policy states that "Mercy ***may grant*** co-workers exemptions to the mandatory COVID-19 vaccination for certain medical contraindications or sincerely held religious beliefs." *See* Aple. App. 918 ¶11; R. Doc. 23, p. 3 ¶11; Aple. App. 1510-23; R. Doc. 23-9. The FAQs state the same: "Exemptions to the mandatory COVID-19 vaccination may be granted for certain medical contraindications...Exemptions to the mandatory COVID-19 vaccination may also be granted if vaccination conflicts with the tenets of a sincerely held religious belief." *See* Aple. App. 893; R. Doc. 20-10, p. 3. Importantly, the CMS Mandate actually ***disfavors*** vaccine exemptions and only allows Mercy to retain unvaccinated staff if that staff member has a bona fide legal right to a reasonable accommodation pursuant to Title VII or the ADA. *See* 86 Fed. Reg. 61555-01, 61569-61572; Add. 2-5. Therefore, Mercy ***would be violating*** the federal regulation if it automatically granted exemptions without making sure they qualified as bona fide exemptions. And, Pope Francis and the Catholic Church encouraged

vaccination of all its members to protect themselves and others as an "act of love." Devin Watkins, *Pope Francis urges people to get vaccinated against Covid-19*, Vatican News, (Aug. 18, 2021), https://www.vaticannews.va/en/pope/news/2021-08/pope-francis-appeal-covid-19-vaccines-act-of-love.html.

Plaintiff's reliance on these documents cannot form the basis of waiver. Mercy never made any representations to anyone that their religious exemptions would be granted solely because a request was timely submitted. The only representation conveyed by Mercy in its Policy and FAQs was that an exemption ***may*** be granted. As such, there was no representation that exemptions would be provided – and certainly would not be granted automatically for merely submitting a timely request. If Plaintiff could have relied on anything in Mercy's COVID-19 policy or its FAQs, it was that an exemption **may be granted**, not that it was going to be granted. Moreover, Mercy's policy cannot be construed as a promise upon which Plaintiff could rely. *See Ockletree v. Franciscan Health System*, 2012 WL 6146673, at *6 (W.D. Wash., Dec. 11, 2012) (holding that defendant hospital "is not estopped from asserting religious

exemption because its written policy cannot be construed as a promise that [sic] it would not assert the exemption").

Conway also exhausts much unnecessary energy arguing that Mercy's Title VII exemption is not a jurisdictional bar to Title VII claims. Whether Mercy's defense is "jurisdictional" or not, Mercy properly raised and proved its Title VII religious organization exemption based upon undisputed facts, as evidenced by the trial court's grant of summary judgment. Conway has not and cannot "defeat" Mercy's religious organization status and defense based on the record in this case and the plethora of prior holdings granting Mercy this exemption.

Conway's waiver argument is absurd and contrary to established law. Moreover, such a result would run afoul of the underlying Constitutional separation of church and state doctrines. It is clear that Mercy cannot waive its religious exemption under Title VII. *Jenkins*, No. 5:19-CV-05221, 2020 WL 1271371, at *2 (citing *Hall,* 215 F.3d at 625 and *Little v. Wuerl*, 929 F.2d 944, 951 (3rd Cir. 1991)).

In *Jenkins*, the plaintiff presented a similar identical argument as Conway – that Mercy had waived its religious exemption because it had implemented and enacted various employment policies, including anti-

discrimination policies stating it would not discriminate against individuals on the basis of religion. *Id.* Here, Conway makes the same argument, but simply replaces Mercy's employment policies with the CMS Mandate. However, that does not change the resulting legal analysis or law. As the *Jenkins* court stated,

> [T]he religious organization exemption is a limitation on Title VII's reach. By prohibiting employment discrimination for enumerated reasons, Title VII alters the general rule in the United States that employment is at will, and in altering that rule Congress elected not to limit religious organizations from making employment decisions based on religion. As a religious corporation, Mercy remains free to discriminate against its employees on the basis of religion, whether or not Mercy has adopted an internal policy claiming it will not do so.

*Id.*

This same rationale and reasoning should apply even more strongly here to the argument that compliance with the federal government's CMS Mandate could somehow result in waiver. It does not. The *Jenkins* decision is dispositive here and is consistent with the body of jurisprudence pertaining to this issue of waiver. *See Hall*, 215 F.3d at 625 ("Once Congress stated '[t]his title shall not apply' to religiously-motivated employment decisions by religious organizations,' neither party could expand the statute's scope."); *see also Ark Encounter, LLC v.*

*Parkinson*, 152 F.Supp.3d 880, 915 n.25 (E.D. Ky. 2016); *Ginsburg*, 2011 WL 41891, at *6 (stating that "because an institution qualifies for the exemptions under Title VII, it cannot waive its right to assert protection under those exemptions.").

Conway supports her misguided argument and misreading of the CMS Mandate by pointing to breach of contract cases to support her untenable position that Mercy's exemption defense can be waived.

In *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404 (Mo. Ct. App. 1996), an inapposite breach of contract case, the court explained that the plaintiff did not waive any right it may have had to sell its products in defendant's territory at discount prices. Here, we are talking about compliance with (and defenses contained within) federal statutes and regulations. But, even if "waiver" in the context of contract could be applied to the situation between Mercy and Conway, the court in *Acetylene Gas Co.* emphasized that a "waiver is the intentional relinquishment of a known right [and] to rise to the level of a waiver, the conduct 'must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible.'" *Id.* at 409 (internal

citations omitted).  Mercy can in no way be said to have intentionally renounced the religious organization exemption and defense since it has consistently and successfully been making the argument for decades.

Conway also relies on *Boswell v. Panera Bread Co.*, No. 4:14-CV-01833-AGF, 2016 WL 1161573 (E.D. Mo, March. 24, 2016), which is another breach of contract claim. The defendant claimed that plaintiffs waived their right to certain compensation plan payments because they continued to work without objection after the defendant announced a change in how payments would be capped.  Reiterating the *Acetylene Gas Co.'s* holding, the court in Boswell explained:

> A waiver is the intentional relinquishment of a known right. To rise to the level of a waiver, the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible. Similarly, equitable estoppel arises from the unfairness of allowing a party to belatedly assert rights if he knew of those rights but took no steps to enforce them until the other party has, in good faith, been disadvantaged by changed conditions. The doctrine "is not favored in the law and it will not be invoked lightly.

*Id.* at *14 (internal citations omitted).  Conway's reliance on *Boswell* is, again, completely misplaced since there is not a scintilla of evidence that Mercy intentionally waived its defense or acted in an unfair way so as to disadvantage Conway or any other employee.

Finally, Conway points to *Mennen v. Easter Stores,* 951 F. Supp. 838 (N.D. Iowa 1997), a case involving adverse action against an employee based on polygraph examination results. Because the Employee Polygraph Protection Act, 29 U.S.C. § 2001, et seq., contains very specific procedures that must be used when an employer relies on polygraph examination results, the court found that it could not allow the employer to utilize a statutory defense if it did not conduct its internal investigation precisely as required by the statute. The court explained:

> Congress drafted a statute that strikes a delicate balance between the employee's right of privacy with the employer's need to protect its business and economic interests and gives the employer the opportunity to exempt itself from liability. Whether because of ignorance of the EPPA or because of its own volition, Easter failed to seize the opportunity provided under the EPPA. The court is not willing to circumvent the explicit requirements of the statute to provide Easter with the protection it could have had in the first place had it followed the law.

*Id.* at 854. Nothing in *Mennen* supports an argument that Mercy forfeited its ability to use the Title VII religious organization exemption. There are no comparable procedures required by Title VII for Mercy to have followed in order to prevent forfeiture of the defense. Mercy simply *IS* a religious organization and cannot be sued for religious discrimination pursuant to Title VII.

39

Because Mercy cannot waive or forfeit its exemption under Title VII as a religious organization, Conway's argument fails as a matter of law. The district court did not err in granting Mercy's summary judgment motion.

### C. Appellant's Estoppel Argument Fails as a Matter of Law.

Conway also makes an equally unsupported and misguided argument that the underlying court erred when rejecting her estoppel argument. Conway's estoppel argument is simply a second bite at her waiver argument. Conway's theory is that Mercy is estopped from asserting its religious organization exemption defense because Mercy failed to raise its religious organization exemption when complying with the CMS Mandate. *See* Appellant's Brief, p. 12.

This argument is yet another attempt by Conway to fit a square peg into a round hole. As the district court rightfully noted, this argument is "unavailing." *See* App. 57-58; R. Doc. 34, pp. 10-11. There is no estoppel here, and the cases cited by Conway speak only to distinguishable arguments allowed in FMLA case. Unlike those FMLA cases upon which Conway relies, this matter does not involve any explicit guarantees that Mercy made, as it only provided a vehicle for seeking exemptions from

COVID-19 vaccination, but not a guarantee that an exemption would be granted.

Conway falsely asserts that Mercy's vaccination policy "provided that religious exemptions would be granted provided the request was timely submitted." Appellant's Brief, p. 14.[5] However, Mercy's vaccination policy says no such thing. Aple. App. 1510-23; R. Doc. 23-9. Mercy's policy states only that it "may grant co-workers exemptions to the mandatory COVID-19 vaccination for certain medical contraindications or sincerely held religious beliefs." *Id.* There is no mention at all that a timely submitted request would be automatically granted as stated by Conway. This grossly inaccurate statement further underscores the lack of merit of Conway's arguments.

Separately, Conway also asserts that Mercy did not make reference to its religious organization status during a state unemployment hearing

---

[5]Conway cites to records in the Appendix that do not exist. The referenced documents – App. 38-41, R. Doc. 20 at 4-8 – refer to Conway's asserted Additional Material Facts to Mercy's Summary Judgment Motion. Conway has ***not included*** Mercy's responses to these asserted additional material facts. Likewise, Conway also cites to App. 42-47, which consists of Conway's own self-serving affidavit and makes no mention of Mercy's vaccination policy stating it would grant timely submitted exemption requests.

and thereby created an issue of material fact concerning Mercy's religious organization status. However, unlike Title VII's exemption, nothing in the unemployment compensation statute allows Mercy to raise or use a religious organization defense. Not making such an argument, therefore, cannot serve as a waiver of the defense when it is available (as it is here). Moreover, the unemployment compensation statute expressly forbids the use in this claim and in this Court of any findings of fact and conclusions of law made by the state unemployment compensation agency.[6]

In the end, and considering all of these uncontroverted facts and circumstances, the trial court did not err in rejecting Conway's estoppel argument. This Court, therefore, should affirm the trial court's grant of summary judgment in favor of Mercy.

---

[6] Section 288.215.1, RSMo, reads: "Any finding of fact, conclusion of law, judgment or order made by an appeals tribunal, the labor and industrial relations commission or any person with the authority to make findings of fact or law in any proceeding under this chapter shall not be conclusive or binding in any separate or subsequent action not brought under this chapter, and shall not be used as evidence in any subsequent or separate action not brought under this chapter, before an arbitrator, commissioner, commission, administrative law judge, judge or court of this state or of the United States, regardless of whether the prior action was between the same or related parties or involved the same facts.

## CONCLUSION

For the reasons stated herein, and as consistent with the precedent as established by several other courts in this Circuit, the district court's grant of summary judgment should be affirmed.

September 27, 2024

*/s/  James M. Paul*
James M. Paul, MoBar #44232

Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
7700 Bonhomme Avenue, Suite 650
St. Louis, MO  63105

Phone:   314-802-3935
Fax:       314-802-3936
Email:    jim.paul@ogletree.com

*Attorneys for Appellee Mercy Hospital
St. Louis*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) in that it contains 7,989 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and has been prepared in a proportionally spaced 14-point font.

/s/ *James M. Paul*
Attorney for Appellee Mercy Hospital
St. Louis

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed with the Clerk of the Court through the Court's CM/ECF system on this 27th day of September, 2024, and that service of same was made via electronic delivery via the CM/ECF System to all participants.

/s/ *James M. Paul*
Attorney for Appellee Mercy Hospital
St. Louis