CASE NO.: 24-1388
_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

PATRICIA CONWAY,

(Plaintiff-Appellant)

vs.

MERCY HOSPITAL ST. LOUIS,

(Defendant-Appellee)

APPEAL FROM THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

CASE NO.: 4:22-cv-01113-RLW

THE HONORABLE RONNIE L. WHITE
_____

RESPONSE BRIEF OF PLAINTIFF-APPELLANT
_____

Joseph A. Ott
Mark E. Blankenship Jr.
Ott Law Firm
3544 Oxford Blvd
Maplewood, MO 63143
(314) 293-3756

Attorneys for Plaintiff-Appellant

i

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................2

TABLE OF AUTHORITIES.......................................................................3

STATEMENT OF THE ISSUES IN RESPONSE…................…….......5

SUMMARY OF THE ARGUMENT IN RESPONSE………….……........7
ARGUMENT…………………………………………………………..8

CERTIFICATE OF COMPLIANCE.................................................................25

CERTIFICATE OF SERVICE.........................................................................27

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Arbaugh v. Y & H Corp.,* 546 U.S. 500 (2006)....................................10

*Biden v. Missouri*, 595 U.S. 87 (2022)...............................................8

*Celotex v. Catrett*, 477 U.S. 317 (1986).............................................7

*Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84 (2008)................11

## United States Courts of Appeals Cases

*Crotty v. Dakotacare Admin. Servs., Inc.,* 455 F.3d 828 (8th Cir.2006)..................................................................................8

*Global Petromarine v. G.T. Sales & Mfg., Inc.,* 577 F.3d 839, 844 (8th Cir.2009)..................................................................................8

*Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992).....................7

*Montgomery v. City of Ames*, 749 F.3d 689, 697 (8th Cir. 2014)...........8

## United States District Court Cases

*PNC Bank, Nat. Ass'n v. El Tovar*, Inc., No. 4:13–CV–1073 CAS, 2014 WL 538810, at *7–8 (E.D.Mo. Feb. 11, 2014). ....................................7

## Federal Statutes

42 U.S.C. § 2000e *et seq.*.................................................................................9

42 U.S.C. § 2000e–5(f)(3)................................................................8

29 U.S.C. §§ 623(a)-(c), (e)…………………………………………..………..11

**8th Circuit Local Rules**

8th Cir. Jury Instruction Binder 5.40………………………………………20

8th Cir. Jury Instruction Binder 16.60……………………………………14

## STATEMENT OF THE ISSUES IN REPLY

1. Whether compliance with CMS Rule implementing the requirement that workers receive the COVID-19 vaccine was "connect with the carrying on" of Mercy's religious work;

    a. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) .

    b. *Biden v. Missouri*, 595 U.S. 87, 91, 142 S. Ct. 647, 651, 211 L. Ed. 2d 433 (2022).

    c. *Arbaugh v. Y & H Corp., 546 U.S. 500 (2006).*

    d. *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 91, 128 S. Ct. 2395, 2400, 171 L. Ed. 2d 283 (2008).

2. Whether an affirmative defense of statutory exemption is subject to waiver or estoppel.

    a. *Arbaugh v. Y & H Corp., 546 U.S. 500 (2006).*

    b. *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 91, 128 S. Ct. 2395, 2400, 171 L. Ed. 2d 283 (2008).

## SUMMARY OF THE ARGUMENT IN REPLY

Mercy **denies** that it had any responsibility whatsoever to honor requests for exemption from a mandatory federal rule.

In fact, Conway **did** apply for such exemption from the Mercy vaccination requirement, on the ground that she had a religious objection to the same. Mercy's fete of their voluminous record of religious history does not and cannot excuse their failure to offer a non-discriminatory exemption process from the CMS Rule mandating worker vaccinations.

To allow Mercy to on the basis of religion preventing workers from proving a religious exemption to a government mandate vaccine. That made it a requirement that Conway abandon deeply held religious beliefs to maintain her job in healthcare. For this exact reason, the Supreme Court held unequivocally in interpreting the regulations at issue that "[t]he [CMS COVID-19] rule requires providers to offer medical and religious exemptions…". *Biden v. Missouri*, 595 U.S. 87, 91, 142 S. Ct. 647, 651, 211 L. Ed. 2d 433 (2022).

Plaintiff-Appellant Conway, for the purpose of this reply brief, will rest on the arguments proffered in her Opening Brief this circuit to

abandon the *Leboon* test and incorporate the more sensible reasoning adopted in the *Spencer* test. Plaintiff Conway urges that even if it is assumed *arguendo* that Mercy was a religious organization subject to the exemption.

## ARGUMENT

### I. __Defendant's have agreed that § 2000-e1 immunity is an affirmative defense, and this Court should reject their proof of it. They have not met the standard of proof to win such affirmative defense.__

Affirmative defenses are assertions by a defendant raising new facts and arguments that, if true, will defeat a plaintiff's claim, and a defendant therefore bears the burden of proof with respect to its affirmative defenses. *PNC Bank, Nat. Ass'n v. El Tovar*, Inc., No. 4:13–CV–1073 CAS, 2014 WL 538810, at *7–8 (E.D.Mo. Feb. 11, 2014). As with any motion for summary judgment, a movant seeking summary judgment on an affirmative defense must first "inform[ ] the district court of the basis for its motion and identify[ ] those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *721 Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). __There is no requirement that the movant support its motion with materials negating the affirmative defense. See *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.__ (Emphasis supplied). Rather, the party with "the burden of proof on an issue ... must present evidence

4

sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion." *Crotty v. Dakotacare Admin. Servs., Inc.*, 455 F.3d 828, 831 (8th Cir.2006).

Mercy bore the burden of proving that they succeeded on each and every element of their affirmative defense pursuant to § 2000e1, yet offered no explanation for whether this discriminatory action was "carried out" within the employment relationship with Plaintiff Conway. "A district court commits reversible error by granting summary judgment on an issue not raised or discussed by the parties if the losing party did not have notice and an opportunity to respond." *See Global Petromarine v. G.T. Sales & Mfg., Inc.,* 577 F.3d 839, 844 (8th Cir.2009); *Heisler v. Metro. Council,* 339 F.3d 622, 631 (8th Cir.2003); *see also* Fed.R.Civ.P. 56(f)." *Montgomery v. City of Ames*, 749 F.3d 689, 697 (8th Cir. 2014).

## 1. <u>Meeting the burden of proof on the affirmative defense of exemption cannot be met on this record.</u>

Defendant-Appellee at the District Court level and now at the appellate level has completely failed to address the bottom level assertion made by Plaintiff-Appellant: their status as a religious organization does not operate as a jurisdictional bar to all claims against them on the basis

of religious exemption pursuant to 42 U.S.C. § 2000e-1 because the exemption does not apply to Mercy's conduct **in administering the COVID-19 vaccine program.**

Compliance with that program is not connected with the "carrying on" of their work as a religious organization; compliance was required as a matter of federal law in practice for almost all workers that want to work in healthcare. *Biden v. Missouri*, 595 U.S. 87, 91, 142 S. Ct. 647, 651, 211 L. Ed. 2d 433 (2022).

Conway, in order to continue in her employ as a nurse without being terminated and losing provable leverage with future employers, was **required** to get this vaccine, or an exemption. Because she was required to get it, Mercy must be required to offer exemptions from it. Failure to do so is discriminatory on the basis of religion from which Mercy has not proven they are exempt.

2. **Mercy was required to prove their affirmative defense, and did not.**

Mercy apparently concedes now that the § 2000e-1 exemption is an affirmative defense. Appellant Reply Brief at 36. But their argument fails

to address whether Mercy has submitted sufficient evidence at the district court level to carry their burden of proof on that point. It has not.

As first announced in *Arbaugh,* 42 U.S.C. § 2000e–5(f)(3) (authorizing jurisdiction over actions "brought under" Title VII), the various exemptions detailed in Title VII – whether dealing with the numerosity requirements described 42 U.S.C. § 2000e(b) or for a religious organization at § 2000e-1 – must be proven as affirmative defenses subject to the requirements for all other affirmative defenses. *Arbaugh v. Y & H Corp., 546 U.S. 500 (2006)*

**None** of the facts described in Appellee-Defendant Mercy's Statement of Uncontroverted Material Facts proves that the vaccine program was "carried on" within the meaning of the institutional exemption that comes by proving the affirmative defens.. Appellant App 31-33. On that basis alone, this Court should reverse the district court – no proof has been made whatsoever about the applicability of the exemption at issue *to the facts in this case*, because none has been submitted to the District Court in Defendant-Appellee's Rule 56 Motion.

### 3. **Mercy was required to show similar proof of exemption as in the *Meacham* case.**

7

Although Appellee-Defendant makes the conclusory assertion that Appellant-Plaintiff's analogy about the operation of exemption as an affirmative defense from the FMLA or ADEA context fails, and the district court similarly concludes that the argument is "unavailing," neither offers reasoning to support the same. See Appellee App. 57-58; R. Doc. 34, pp. 10-11.

The Supreme Court's interpretation of FMLA and ADEA exemptions in *Meacham v. Knolls Atomic Power Laboratory* shows how the affirmative defense operates by analyzing language in a similar statute. *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 91, 128 S. Ct. 2395, 2400, 171 L. Ed. 2d 283 (2008). In *Meacham,* to discern whether the analogous statutory exemption acted as an affirmative defense, the Court first looked at the structure of the statute. So, *Meacham* compared the ADEA's general prohibitions against age discrimination, 29 U.S.C. §§ 623(a)-(c), (e), and the listed statutory exemption for bona fide occupational qualifications, located at § 623(f). Because the terms were were located in different portions of the statute. *Meacham* at 91. In *Meacham,* given the manner in which the statute is "apart from the prohibitions (and expressly referring to the prohibited conduct as such),

it is no surprise that we have already spoken of the BFOQ and RFOA provisions as being among the ADEA's "five affirmative defenses." *Meacham* at 91. (Internal citations omitted).

Likewise in this case, the § 2000-e(1) exemptions are laid out "apart from" the other provisions of the statute, in a separate section from any language discussing jurisdiction, liability or the like, and with a header called "Exemptions" to whit. 42 U.S.C. § 2000e – 42 U.S.C § 2000e17.

4. ***Meacham* provides guidance on how an exemption operates as an affirmative defense.**

In order to prevail on their affirmative defense, the *Meachem* case provides the closest controlling authority analogy about how such an affirmative defense should operate.

In *Meacham* the Supreme Court rebutted the assertion that the exemption at issue ought be conflated with the Plaintiff's burden to establish liability for the conduct at issue. Focusing on the language of the statutory prohibition against discrimination on the basis of age, the court concluded that

> "Reasonableness is a justification categorically distinct from the factual condition "because of age" and not necessarily correlated with it in any particular way: a reasonable factor may lean more

heavily on older workers, as against younger ones, and an unreasonable factor might do just the opposite." *Meacham,* supra at 96.

Likewise here, the factual condition upon which religious discrimination has been established by the Plaintiff-Appellant – a fact not briefed nor addressed in any way by the circuit court – must maintain analytic distinction from the question of whether the § 2000-e1 exemption negates liability for the conduct.

The district court and Defendant-Appellee's principle analytic mistake in this context is the abject failure to pay any attention at all to when the exemption applies. By its plain language, § 2000-e1 in pertinent part exempts religious employers from application of Title VII: "This subchapter shall not apply to an employer … with respect to the employment of individuals of a particular religion to perform **work connected with the carrying on** by such corporation, association, educational institution, or society of its activities."

Plainly, the affirmative defense only exempts conduct of the employer insofar as it is applied to "work connect with the carrying on" of the Employer – not as a blanket exemption authorizing any form of religious discrimination by the employer. By way of analogy to another

employment statute rife with exemptions that must be proven as affirmative defenses, the Eighth Circuit Jury Instruction Binder requires proof of the following in cases where the employer asserts the executive employee exemption in an FLSA action:

> *First*, plaintiff was compensated on a salary basis as defined in Instruction No.____ 2 at a rate not less than $6843, 4 per week5; and

> *Second*, plaintiff's principal, main or most important duty was management of [(the enterprise in which plaintiff was employed) or (a customarily recognized department or subdivision of the enterprise in which plaintiff was employed)]7; and

> *Third*, plaintiff customarily and regularly directed the work of at least two or more other full-time employees or their equivalent; and

> *Fourth*, plaintiff had authority to hire and fire other employees, or plaintiff's suggestions and recommendations as to hiring, firing, advancement, promotion or other change of status of other employees were given particular weight.
> *JIB* 16.60.

As can plainly be seen, the burden of proof for asserting such an exemption requires a showing that the conduct upon which Plaintiff sued – the discrimination – occurred as a part of their normal everyday business activities in furtherance of the purposes of the employer.

11

Likewise here, the requirement that workers receive a vaccine bore no connect to Mercy's carrying on as a religious institution – it had to do with their carrying on as a hospital that receives funding from Medicare.

5. <u>Construed as an affirmative defense, Mercy was required to show that their administration of the COVID-19 vaccine program was work "connected with the carrying on" of their activities as a religious institution. Mercy cannot, because the duty to perform the test or receive an exemption existed independent from the employment relationship.[1]</u>

Mercy attacks endlessly the argument that the CMS Rule Mandate required them to offer a religious exemption for workers subject to the Rule. *See* e.g. Appellee's Reply Brief at 36 ("Despite Conway's gross and intentional misleading…" and similar baseless snipes). The CMS Rule Mandate did so require.

In spite of their endless screeds about Plaintiff-Appellant Conway's purported "intention misreading" of the rules implementing the CMS mandate, there is nary a quotation nor mention of the actual text of rule

---

[1] Mercy continues to deny they had any duty to offer a religious exemption.

in their entire Reply Brief. Mercy prays the court will rely upon their voluminous submission of religious materials to infer that the CMS implementing regulations contains no such rule.

That just isn't right. The great weight of authority interpreting the legality of the mandate requires such an exemption process be provided.

"The [CMS COVID-19] rule requires providers to offer medical and religious exemptions…". *Biden v. Missouri*, 595 U.S. 87, 91, 142 S. Ct. 647, 651, 211 L. Ed. 2d 433 (2022). The CMS Rule similarly provides:

> **Under Federal law**, including the ADA and Title VII of the Civil Rights Act of 1964 as noted previously, **workers who cannot be vaccinated** or tested **because of** an ADA disability, medical condition, or **sincerely held religious beliefs, practice**, or observance **may** in some circumstances **be granted an exemption from their employer**…**Employers <u>must</u>** also **follow Federal laws protecting employees from retaliation for requesting an exemption on account of religious belief** or disability status. *See Appellee Add.* At 7. (Emphasis mine).

Apparently unconvinced by the *per curiam* opinion of the Supreme Court upholding the enforceability of the CMS Vaccine Mandate Rule for Healthcare Workers, and the plain text of the Rule itself, Appellee-

Defendant Mercy wantonly still fails to understand and their plain obligations under the law to offer workers' exemptions.

Mercy's argument that the CMS mandate does <u>not</u> require them to offer an exemption from the requirement that workers receive the COVID-19 vaccine is part and parcel of their fundamental misunderstanding of how the § 2000-e1 exemption operates when asserted as an affirmative defense. The § 2000-e1 exemption does not mean that Mercy is allowed to discriminate on the basis of religious belief in everything that it does – only that, for employees doing "work connected with the carrying on" of their business, Mercy is statutorily authorized to discriminate on the basis of their religion.

Plaintiff has alleged that Mercy did exactly this – because her claimed religious exemption did not originate from the Catholic faith, it was not accepted by Mercy and not given any consideration by their exemption process. *See* e.g. Appellant Appendix at 22, Plaintiff Complaint ¶ 65.

**II. Mercy has not proven the affirmative defense of statutory exemption because plaintiff has shown facts that subject it to**

**forfeiture, Defendants have not proven its relationship to the conduct at issue.**

A. The affirmative defense of statutory exemption pursuant to § 2000-e1 is analytically distinct from the question of whether Mercy is an "employer" for the purpose of proving liability for a Title VII claim.

Mercy asserts repeatedly in their Reply that it "cannot waive" its status as a religious organization for the purposes of the statutory exemption described at § 2000-e1. *See e.g.* Defendants Reply at 41. As a threshold matter, there is no analytic distinction whatsoever between an affirmative defense that cannot be disproven on any basis related to Plaintiff's liability claim, and a jurisdictional bar to asserting the claim. *Meacham* following *Arbaugh* dispels the notion that district courts are allowed to treat such a "statutory exemption" in this way.

*Meacham* expressly addresses the same when it rejected the employer's urging that the "reasonable factors other than age" provision in § 623 works to negate the premise of liability, rather than operating as an affirmative defense. *Meacham*, *infra* at 93. The *Meacham* court ruled that the "reasonable factors other than age" and the "bona fide

occupational qualification" exemptions are different species of the same genera of affirmative defense. *Id.* In spite of the logic that making a decision based upon "reasonable factors other than age" necessarily implicates the question of whether the employer was motivated by age in the determination – the question of liability – the *Meacham* court makes clear that by necessity, the questions must be treated differently. *Id.* at 97. In *Meacham*, the employer could make a decision to terminate a particular employee because of their age, but have been motivated to make that decision by a policy determination relying upon a reasonable factor other than age. *Id.*

Similarly here, Mercy urges that this court must conflate whether Plaintiff can satisfactorily prove whether Mercy is an "employer" for the purposes of her Title VII charge, and whether Mercy is subject to the affirmative defense that they are exempted from liability for discrimination because of their status as a religious entity "carrying on" religious work.

The proof that Mercy is an "employer" within the meaning of Title VII is distinct from whether they are exempted from applicability for the

same. In particular, the model JIB for Title VII charges under the eighth circuit requires showing that:

> *First*, the defendant [discharged] [2] the plaintiff; and
>
> *Second*, the plaintiff's (sex)[3] [was a motivating factor][4] [played a part] [5] in the defendant's decision.[6]

*JIB* 5.40.

In this context, an analogous instruction discussing discharge necessarily implies that the jury must find that there was an employee-employer relationship between Conway and Mercy. But, the affirmative defense that Mercy, although motivated by religious discrimination to discharge Plaintiff, was exempted because at the time the decision was made they were engaged in the "carrying on" of their religious purpose, is necessarily different under *Arbaugh*.

### B. Waiver and estoppel are not barred by the affirmative defense of statutory exemption.

Mercy's strategy to rely upon a web of self-referencing district court cases holding that the § 2000-e1 exemption "cannot be waived" is an

appeal to this court to lazily accept that, since they have a 4,000 page binder of materials and other lawyers didn't realize the flaw in their argument, they must be right.

Looking at the case law Mercy relies on shows that is simply not the case. **<u>None</u>** of the district court cases provided to this Court in any manner addresses whether the statutory exemption at § 2000e-1 operates as an affirmative defense. Each treats the exemption as a jurisdictional bar to the assertion of liability for Mercy without examining in any way whether the conduct of Mercy in discriminating against the employee was within the purview of the exemption.

## III. Conclusion

*Arbaugh* clearly provides that even statutory exemptions must be treated as affirmative defenses. At the most basic level, the trial court committed the same error as numerous other trial courts when faced with Mercy's prepared exhibit packet – it kowtowed to the volume of paperwork supporting Mercy's religious exemption argument, without assessing the impact of how that exemption must be proven.

On the basis of the manner in which Eighth Circuit courts submit claims for other statutory exemptions – like from the FLSA – the claimed

statutory exemption based upon Mercy's status as a religious institution must be proven.

On summary judgement, Mercy was required to show that the act of ordering that their workers take the COVID-19 vaccine was part of the "carrying on" of their business. But it was not. The COVID-19 vaccine mandate was a profound requirement to condition all health care employment on. As a result, the mandate specifically required – as acknowledged by the *Biden* case – that workers be offered a manner to seek a religious exemption from receiving the vaccine.

Mercy at the trial court level and even before this Court has apparently resisted precisely this command. By failing to show that *Mercy*, and not the federal government, originated the vaccine mandate, Mercy cannot show that the receipt of the vaccine was part of the carrying on of their business. Rather, the mandate was required to be administered upon pain of loss of federal Medicare funding.

Mercy's advertisement that workers could receive an exemption was, at least for Patricia Conway, untrue. Conway relied upon the same to her detriment. Mercy ought not be permitted to so mislead its employees. The law does not allow it, and other trial courts treating the

§ 2000-e1 exemption as an irrebuttable affirmative defense impermissibly converted the defense into a jurisdictional bar to recovery.

WHEREFORE, Conway prays the judgement be reversed, and for all such relief as may be just and proper under the premises.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 4011 words, excluding the parts of the brief exempted by Fed. R. App. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with Times New Roman 14-point font.

OTT LAW FIRM

/s/ Joseph A. Ott
Joseph A. Ott, #67889
Mark E. Blankenship Jr., #73123
3544 Oxford Blvd
Maplewood, MO 63143
Phone: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law
Attorneys for Plaintiff-Appellant

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certify that a version of the brief has been electronically filed, pursuant to Circuit Rule 28A(h), in a non-scanned PDF format. The undersigned also certify that the file has been scanned for viruses and is virus-free.

OTT LAW FIRM

/s/ Joseph A. Ott
Joseph A. Ott, #67889
Mark E. Blankenship Jr., #73123
3544 Oxford Blvd
Maplewood, MO 63143
Phone: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law
Attorneys for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

The undersigned hereby certify that on October 11, 2018, an electronic copy of the Brief of Appellant was filed with the Clerk of the Court for the United States Court of Appeal for the Eighth Circuit using the CM/ECF System. The undersigned also certify that all counsel of record in this case are registered CM/ECF users, and that service of the brief will be accomplished by the CM/ECF System.

OTT LAW FIRM

/s/ Joseph A. Ott
Joseph A. Ott, #67889
Mark E. Blankenship Jr., #73123
3544 Oxford Blvd
Maplewood, MO 63143
Phone: (314) 293-3756
Fax: (314) 689-0080
joe@ott.law
mark@ott.law
Attorneys for Plaintiff-Appellant